**RUSCH FACTORS, INC., Plaintiff,**

v.

**Leonard M. LEVIN, Defendant.**

**Civ. A. No. 3869.**

United States District Court
D. Rhode Island.
April 17, 1968.

Michael A. Silverstein, Woonsocket, R. I., for plaintiff.

Bruce M. Selya, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is a diversity action, pursuant to 28 U.S.C. § 1332, commenced by the plaintiff, a New York commercial banking and factoring corporation, against the defendant, a resident of Rhode Island and a public accountant certified in accordance with Title 5, Chapter 3, Section 5 of the General Laws of Rhode Island, 1956, as amended, 1962. The amount in controversy, exclusive of interest and costs, exceeds $10,000.

The facts are as follows. In late 1963 and early 1964 a Rhode Island corporation sought financing from the plaintiff. To measure the financial stability of the corporation the plaintif requested certified financial statements. The defendant accountant prepared the statements which represented the corporation to be solvent by a substantial amount. In fact, the corporation was insolvent. On or before February 10, 1964, the corporation submitted the statements to the plaintiff. The plaintiff relied upon

the statements and loaned the corporation a sum in excess of $337,000.00. Subsequently, the corporation went into receivership, and the plaintiff has been able to recover only a portion of the amount loaned to the corporation.

The plaintiff complains that it has been injured in an amount in excess of $121,000.00 as a result of its reliance upon the fraudulent or negligent misrepresentations in the financial statements certified by the defendant accountant. The defendant has moved to dismiss pursuant to Fed.R.Civ.P. 12(b) (6), on two grounds: (1) that the Rhode Island statute of limitations for personal injuries or injuries by spoken word, Title 9, Chapter 1, Section 14 of the General Laws of Rhode Island, 1956, bars the plaintiff's action; or (2) that the absence of privity of contract between the defendant accountant and the plaintiff reliant party is a complete defense. In the alternative, the defendant has moved for a more definite statement pursuant to Fed.R.Civ.P. 12(e).

## MOTION TO DISMISS

*The Statute of Limitations:*

A federal court whose jurisdiction is predicated upon diversity of citizenship must apply the substantive law of the state in which it sits. Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. For purposes of the *Erie* doctrine, the law relating to limitation of actions is substantive. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. Thus, this Court must look to the Rhode Island statutes of limitations.[1]

As recited in the complaint, the acts complained of were committed no later than February 10, 1964, and as reflected by the court records, this action was commenced approximately two years and eleven months later, on December 5, 1967. If, as the defendant asserts, this action falls within Title 9, Chapter 1, Section 14 of the Rhode Island General Laws, 1956,[2] the one-year statute of limitations for injuries by spoken words and two-year statute for injuries to the person, then the plaintiff is barred. If, however, as the plaintiff argues, this action falls within Title 9, Chapter 1, Section 13 of the Rhode Island General Laws, 1956, as amended, 1965,[3] the six-year general statute of limitations for all injuries not otherwise specified, then the plaintiff is not barred. The issue as crystallized is, then, whether pecuniary loss wrought by reliance upon a fraudulent or negligent misrepresentation is either injury by spoken words or personal injury within the meaning of Title 9, Chapter 1, Section 14 of the Rhode Island General Laws, 1956.

Since this is a question of first impression in Rhode Island it must be established by a process of informed con-

---

[1]. Rhode Island's statutes of limitations do not conflict, under the facts of this case, with New York's statutes of limitations. Compare § 9–1–13 of the Rhode Island General Laws with § 213(9) of the New York Civil Practice Law and Rules, as amended, 1966. If there were such a conflict, then this Court would be compelled, Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477, to decide, under Rhode Island choice of laws principles, whether New York's or Rhode Island's statutes of limitations should be applied.

It should be noted further that Rhode Island does not have a "borrowing statute," that is, a statute which borrows the statutes of limitations from the jurisdiction whose law governs the wrong, which is applicable to the facts of this case. If there were such a statute, this Court would be compelled to apply it. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

[2]. 9–1–14. Limitation of actions for words spoken or personal injuries.—Actions for words spoken shall be commenced and sued within one (1) year next after the words spoken, and not after. Actions for injuries to the person shall be commenced and sued within two (2) years next after the cause of action shall accrue, and not after.

[3]. 9–1–13. Limitation of actions generally. —Except as otherwise specially provided, all civil actions shall be commenced within six (6) years next after the cause of action shall accrue, and not after.

jecture how the Rhode Island Supreme Court would rule if the issue were presented to it for determination. Clearly this is not an action for "words spoken." Whether that portion of the statute should be read to include both libelous statements and oral misrepresentations is a question this Court need not determine. On its face, the statute includes only actions which concern oral statements. By implication, written misrepresentations are excluded. Since the misrepresentations complained of in the instant case were the written computations and certifications of the defendant accountant, the "words spoken" portion of Title 9, Chapter 1, Section 14 is inapplicable.

■ Nor is this action one for injuries to the person. Generally, actions for fraudulent or negligent misrepresentation resulting in pecuniary loss are classified as property damage actions because the injury consists in a diminution of the reliant party's estate. See, e. g., Guggisberg v. Boettger, 139 Minn. 226, 166 N.W. 177; In Re Harper, 175 F. 412, 420; Phipps v. Wright, 28 Ga. App. 164, 110 S.E. 511; Side v. Thompson, Sup., 205 N.Y.S.2d 240. See generally 34 Am.Jur. Limitation of Actions § 100 (1941). It could be argued, however, that pecuniary loss resulting from misrepresentation is not property damage, as that category is limited to damage to tangible real or personal property. This Court deems both fruitless and mechanical an inquiry into the reasonability of classifying an action in misrepresentation as either a personal injury or a property damage action. The proper inquiry, the inquiry mandated by the Rhode Island statutory scheme relating to limitation of actions, is only whether the plaintiff has been injured in his person, Title 9, Chapter 1, Section 14, or in some other unspecified manner, Title 9, Chapter 1, Section 13.

In this regard, the controlling precedent is Commerce Oil Refining Corporation v. Miner, 98 R.I. 14, 199 A.2d 606. In that case the Rhode Island Supreme

Court characterized an injury perpetrated by malicious use of process as an injury to the person. The Court stated at p. 610:

It is then our conclusion that the phrase 'injuries to the person' as used in the instant statute is to be construed comprehensively and as contemplating its application to actions involving injuries that are other than physical. Its purpose is to include within that period of limitation actions brought for injuries resulting from invasions of rights that inhere in man as a rational being, that is, *rights to which one is entitled by reason of being a person in the eyes of the law.* Such rights, of course, are to be distinguished from those which accrue to an individual by reason of some peculiar status *or by virtue of an interest created by contract or property.* (Emphasis added.)

What do we have in the case at bar? It is certainly not an invasion of the plaintiff's rational integrity. Really, it is nothing more or less than an invasion of the plaintiff's pocketbook. The complaint rests on the theory that the plaintiff advanced funds to the defendant's client which upon the insolvency of the client became lost to the plaintiff. This is far removed from the invasion of personal rights referred to in the *Commerce Oil* case. This Court determines that pecuniary loss resulting from reliance upon fraudulent or negligent misrepresentations is not an injury to the person within the meaning of Title 9, Chapter 1, Section 14 of Rhode Island General Laws, 1956. Therefore, the applicable statute is Title 9, Chapter 1, Section 13 of Rhode Island General Laws, 1956, as amended, 1965, the general six-year statute of limitations. The defendant's motion to dismiss with respect to the statute of limitations is denied.

*The Privity Defense*

■■ As the Court noted, supra, a federal court whose jurisdiction is predicated upon diversity of citizenship must apply the substantive law of the state in which it sits. Erie R. R. Co. v. Tompkins,

304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. For the purposes of the *Erie* doctrine, state choice of laws principles are substantive, and thus must be applied. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. If, then, there were a conflict between the law of Rhode Island, the place of the making of the misrepresentation by the defendant, and New York, the place of the plaintiff's reliance and consequent loss, it would be necessary for the Court to determine, under Rhode Island choice of laws principles,[4] whether the law of Rhode Island or that of New York, relating to the scope of an accountant's responsibilities, should be applied. But there is no such conflict of laws. New York law relating to the scope of liability for intentional or negligent wrongdoing is grounded on the same theory of risk distribution as is Rhode Island law. See, e. g., Pastorelli v. Associated Engineers, Inc., D.C., 176 F.Supp. 159, 164. Admittedly, the New York body of law is more quantitatively developed than is its Rhode Island counterpart, with respect to the scope of a negligent or fraudulent misrepresenter's responsibilities. This is to be expected, given the concentration of population and hence the proliferation of legal activity in New York. But the basic theory is the same. This Court decides that a Rhode Island court would perceive the absence of conflict between the two jurisdictions, both of which would, in a determination of the issues in the instant case, look to the entire Anglo-American body of law relating to the scope of a negligent or fraudulent misrepresenter's obligations.[5] See Tray-

4. No Rhode Island statutory or decisional law purports to deal with the choice of laws problem generated by the multistate nature of the wrong in this case. If there were a conflict this Court would have to predict what the Rhode Island Supreme Court would do if it had to decide this choice of laws question.

5. Should a genuine conflict exist between the general tort law of Rhode Island and the more specific and developed tort law of New York, then this Court would have first to ascertain what choice of law rule Rhode Island would adopt in the circumstances of this case, see footnote 4 supra; and would have second, to apply that rule.

If Rhode Island followed the vested rights principle of choice of laws, as some of its older cases indicate it would, e. g., O'Reilly v. New York & New England R.R., 16 R.I. 388, 17 A. 171, 19 A. 244, 5 L.R.A. 364, 6 L.R.A. 719; Pendar v H. & B. American Machine Co., 35 R.I. 321, 87 A. 1, L.R.A.1916A, 428; Kwasniewski v. New York, New Haven & Hartford R.R., 53 R.I. 144, 164 A. 558, then the law of the jurisdiction where the tort occurred would control. That would probably be New York, the place of the plaintiff's reliance and consequent loss. See Note: Conflict of Laws in Multistate Fraud and Deceit, 3 Vand.L. Rev. 767 (1950).

If, on the other hand, Rhode Island followed the more modern contacts and interest analysis approach to choice of laws, as enunciated in the tentative drafts of the Restatement (Second) of Conflict of Laws, then § 379(c) (2) of the Restatement (Second) would be the applicable principle of law. That section states:

(2) When the plaintiff's action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which has the most significant relationship with the parties and the occurrence and which therefore is the state of governing law:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,

(b) the place where the plaintiff received the representations,

(c) the place where the defendant made the representations,

(d) the domicil, state of incorporation and place of business of the parties,

(e) the situs of a tangible thing which is the subject of the transaction between the parties, and

(f) the place where the plaintiff is to render performance under the contract which he has been induced to enter by the false representations of the defendant.

As applied to the facts of the instant case, that section would appear to establish New York as the state with the most substantial contacts and hence as the jurisdiction whose law should control.

In so far as New York law would be applied under either the vested rights or

nor, Is This Conflict Really Necessary, 37 Texas L.Rev. 657, 665, 673 (1959). The Court therefore proceeds to a consideration of the case law relating to the scope of liability for fraudulent or negligent misrepresentation.

Privity of contract is clearly no defense in a fraud action. An intentionally misrepresenting accountant is liable to all those persons whom he should reasonably have foreseen would be injured by his misrepresentation. Ultramares v. Touche & Co., 255 N.Y. 170, 174 N.E. 441, 74 A.L.R. 1139. See generally P. Keeton, The Ambit of a Fraudulent Representor's [sic] Responsibility, 17 Texas L.Rev. 1 (1938). Neither actual knowledge by the accountant of the third person's reliance nor quantitative limitation of the class of reliant persons is requisite to recovery for fraud. See Comment, Accountants' Liability to Third Parties Under Common Law and Federal Securities Law, 9 B.C.Ind. & Comm.L. Rev. 137, 142–43 (1967). The same broad perimeter prevails if the misrepresenter's conduct is heedless enough to permit an inference of fraud. State St. Trust Co. v. Ernst, 278 N.Y. 104, 15 N.E.2d 416, 120 A.L.R. 1250 (1938). There are several reasons which support the broad rule of liability for fraudulent misrepresentation. First, liability should extend at least as far in fraud, an intentional tort, as it does in negligence cases resulting in personal injury or property damage. Second, the risk of loss for intentional wrongdoing should invariably be placed on the wrongdoer who caused the harm, rather than on the innocent victim of the harm. Finally, a broad rule of liability may deter future misconduct. See Comment, 9 B.C.Ind. & Comm.L.Rev. 137, 143 (1967). The Court determines, for the above stated reasons, that the plaintiff's complaint is sufficient in so far as it alleges fraud.

No appellate court, English or American has even held an accountant liable in negligence to reliant parties not in privity. Candler v. Crane, Christmas & Co., [1951] 2 K.B. 164 (C.A.); Duro Sportswear, Inc. v. Cogen, Sup., 131 N.Y. S.2d 20; Investment Corp. of Florida v. Buchman, Fla.App., 208 So.2d 291 (1968); O'Connor v. Ludlum, 92 F.2d 50; State St. Trust Co. v. Ernst, 278 N. Y. 104, 15 N.E.2d 416; Ultramares v. Touche & Co., 255 N.Y. 170, 174 N.E. 441. The reluctance of the courts to hold the accounting profession to an obligation of care which extends to all reasonably foreseeable reliant parties is predicated upon the social utility rationale first articulated by Judge Cardozo in the *Ultramares* case. In that case the defendant accountants were employed by a company to perform the company's yearly audit. The defendants negligently overvalued the company's assets in the balance sheet upon which the plaintiffs, creditors of the company, subsequently relied. In holding the defendant accountants free from liability for their negligence, Judge Cardozo stated at 255 N.Y. 178 and 174 N.E. 444:

> If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes one to these consequences.

The wisdom of the decision in *Ultramares* has been doubted, e. g., Levitin, Accountants Scope of Liability for Defective Financial Reports, 15 Hastings L.J. 436, 445 (1964); Seavey, Mr. Justice Cardozo and the Law of Torts, 52 Harv.L.

---

the substantial contacts approach, and in so far as the New York Court of Appeals would most probably look to the whole corpus of Anglo-American case law and learned commentary in determining the scope of a negligent or fraudulent misrep-

resenter's obligations, the result reached where New York and Rhode Island laws are in conflict is not significantly different than the result reached where they are basically the same.

Rev. 372, 400 (1939); Note, The Accountant's Liability—For What and To Whom, 36 Iowa L.Rev. 319, 327–28 (1951), and this Court shares the doubt. Why should an innocent reliant party be forced to carry the weighty burden of an accountant's professional malpractice? Isn't the risk of loss more easily distributed and fairly spread by imposing it on the accounting profession, which can pass the cost of insuring against the risk onto its customers, who can in turn pass the cost onto the entire consuming public? Finally, wouldn't a rule of foreseeability elevate the cautionary techniques of the accounting profession? For these reasons it appears to this Court that the decision in *Ultramares* constitutes an unwarranted inroad upon the principle that "[t]he risk reasonably to be perceived defines the duty to be obeyed." Palsgraf v. Long Island R. R., 248 N.Y. 339, 344, 162 N.E. 99, 100, 59 A.L.R. 1253. In fact, a recent decision in the United States District Court for the Southern District New York, Fischer v. Kletz, 266 F.Supp. 180 (S.D.N.Y.1967), clearly weakens the authority of the *Ultramares* decision. In that case, the Court held that accountants may have a common-law duty to disclose to the *investing and lending public* the discovery of misrepresentations in their already issued and circulated financial statements. For a thorough treatment of the *Fischer* case, see Comment: Accountants' Liabilities to Third Parties Under Common Law and Federal Securities Law, 9 B.C.Ind. & Comm.L.Rev. 137 (1967).

This Court need not, however, hold that the Rhode Island Supreme Court would overrule the *Ultramares* decision, if presented the opportunity, for the case at bar is qualitatively distinguishable from *Ultramares*. There, the plaintiff was a member of an undefined, unlimited class of remote lenders and potential equity holders not actually foreseen but only foreseeable. Here the plaintiff is a single party whose reliance was actually foreseen by the defendant. The case at bar is, in fact, far more akin to the case of Glanzer v. Shephard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425, another Cardozo opinion and the first case to extend to persons not in privity, liability for negligent misrepresentation causing pecuniary loss. In *Glanzer* a professional weigher contracted with a bean seller to weigh a shipment of beans and certify the weight to the bean buyer. The plaintiff bean buyer paid his seller for the beans in accordance with their weight as represented by the defendant's certificate. When it turned out that the weigher had overweighed, and hence that the buyer had overpaid, the Court allowed the buyer to recover the difference from the misrepresenting weigher. The Court stated at 233 N.Y. 329–340 and 135 N.E. 276:

> In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has nonetheless an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law. * * *

In fact, the *Glanzer* principle has been applied to accountants. The tentative drafts of the Restatement (Second) of Torts § 552 states the rule of law as follows:

> (1) One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

> (2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered

> (a) by the person or one of the persons for whose benefit and guidance he intends to supply the information,

or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction which he intends the information to influence, or knows that the recipient so intends, or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

The same tentative draft includes the following hypothetical illustration of the above-stated rule of law:

A is negotiating with a bank for a credit of $50,000. The bank requires an audit by certified public accountants. A employs B & Company, a firm of accountants, to make the audit, telling them he is going to negotiate a bank loan. A does not get his loan from the first bank but does negotiate a loan with another bank, which relies upon B & Company's certified statements. The audit carelessly overstates the financial resources of A, and in consequence the second bank suffers pecuniary loss. B & Company is subject to liability to the second bank.

Restatement (Second) of Torts § 552, Comments and Explanatory Notes, 13–16, 23–25 (Tent. Draft No. 12, 1966). The *Glanzer* principle also formed the predicate for Lord Denning's dissent in Candler v. Crane, Christmas & Co., [1951] 2 K.B. 164 (C.A.). In that case, the plaintiff responded to a company's effort to obtain financing and requested that he be supplied certified balance sheets. The defendant accountants, whose balance sheets the plaintiff relied on, actually knew the plaintiff and prepared the balance sheets for him, although they were compensated for their services by the company. The balance sheets showed solvency, when in fact there was insolvency. The plaintiff was denied recovery in a 2–1 decision by the English Court of Appeals. Lord Denning, dissenting, argued that the risk theory should be as applicable to cases of economic loss as to cases of property damage or personal injury, that the plaintiff's loss of his investment was the most probable event in light of the defendant's negligence, and that the balance sheet in *Candler* was, like the weight certificate in *Glanzer*, made for the very aim and purpose of influencing the reliant party's conduct. In a subsequent law review article, Prof. Warren Seavey endorsed the Denning dissent. Seavey, Candler v. Crane, Christmas & Co., Negligent Misrepresentation by Accountants, 67 L.Q.Rev. 466 (1951). And in a 1963 decision, the House of Lords cast serious doubt upon the validity of the *Candler* majority decision by ruling that bankers who negligently misrepresented a company's credit standing to trade creditors should be liable in negligence since they knew the creditors would rely on the credit rating. Hedley Byrne & Co. v. Heller and Partners, [1964] A.C. 465, 539. See generally Stevens, Hedley Byrne v. Heller: Judicial Creativity and Doctrinal Possibility, 27 Modern Law Review 121 (1964).

The recent decision of the Florida District Court of Appeals in Investment Corp. of Florida v. Buchman, 208 So.2d 291 (1968), does not dilute the strength of the previously considered authorities. In that case, the Court relied on the *Ultramares* decision and a decision relating to the limits of an abstractor of title's liability for negligent misrepresentation, Sickler v. Indian River Abstract and Guaranty Co., 142 Fla. 528, 195 So. 195, for the proposition that an accountant cannot be liable to reliant parties not in privity as long as the accountant's conduct is not fraudulent but only negligent. The Court, however, expressly acknowledged that as an intermediate appellate court it felt confined by the decision of the Florida Supreme Court in *Sickler*. Moreover, in the estimation of this Court, the case is wrong in so far as it failed either to perceive or to give weight to the distinction between *Ultramares* and *Glanzer*.

▮ With respect, then to the plaintiff's negligence theory, this Court

holds that an accountant should be liable in negligence for careless financial misrepresentations relied upon by actually foreseen and limited classes of persons. According to the plaintiff's complaint in the instant case, the defendant knew that his certification was to be used for, and had as its very aim and purpose, the reliance of potential financiers of the Rhode Island corporation. The defendant's motion is, therefore, denied. The Court does not rule upon, but leaves open for reconsideration in the light of trial development, the question of whether an accountant's liability for negligent misrepresentation ought to extend to the full limits of foreseeability.

## MOTION FOR MORE DEFINITE STATEMENT

The Court deems the plaintiff's complaint neither so vague nor so ambiguous as to preclude the defendant from framing a responsive pleading. See Kuenzell v. United States, D.C., 20 F.R.D. 96. Indeed, the Court finds that the complaint more than adequately satifies the particularity required by Fed.R.Civ.P. 9 (b). See Lynn v. Valentine, D.C., 19 F.R.D. 250.

The defendant's motions are hereby denied in their entirety. The plaintiff will prepare a proper order in accordance with this decision.