**STEPHENS INDUSTRIES, INC., and Morris Stephens, Plaintiffs-Appellants,**

v.

**HASKINS AND SELLS, Axel Ahlberg, Jack Crane and Arlo M. Hall, Defendants-Appellees.**

No. 229–70.

United States Court of Appeals, Tenth Circuit.

March 1, 1971.

William L. Bromberg, Denver, Colo. (Richard A. Miller, Des Moines, Iowa, on the brief), for plaintiffs-appellants.

David M. Ebel, Denver, Colo. (Robert H. Harry, Denver, Colo., and Michael Cooper, New York City, on the brief), for defendants-appellees.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The substantive issues in this appeal involve the liability of public accountants to third parties with whom they are not in privity. Haskins and Sells, an accounting firm, was engaged by two car rental companies to determine the net worth of those businesses by preparing an audited statement. The audit was performed and upon the basis of the figures reflected in the resulting balance sheet, Stephens Industries, Inc. purchased two-thirds of the corporations' stock. Thereafter, the car rental businesses failed, and now Morris Stephens and Stephens Industries sue the accounting firm for allegedly having misrepresented the status of the accounts receivable in the audit. Trial was to a jury which returned a verdict in favor of Haskins and Sells.

In December, 1964, Stephens Industries, through its principal stockholder Morris Stephens, agreed to purchase two-thirds of the stock in Colorado Rent-A-Car, Inc. and Thriftway Rent-A-Car, Inc., subject to an audit by Haskins and Sells to determine the net value of each corporation. The purchase agreement provided that the sellers would retain the accounts and that "[a]ccounts receivable as shown by the records of such corporations, shall be used in determining net worth without adjustment to reflect the fact that the auditors may feel certain accounts are or may be uncollectible in whole or in part."

The sellers contacted and employed Haskins and Sells, and a complete audit was commenced by the individually named appellees. Soon, however, it became apparent that the accounts receivable records had been poorly maintained, and a significant discrepancy appeared between the accounts receivable ledger cards and the general ledger. After spending considerable time unsuccessfully attempting to reconcile the figures, the accountants met with their clients, the car rental companies, to tell them of the difficulty encountered and to inform them of the added cost if the accounts receivable were to be audited.

Haskins and Sells was then shown the purchase contract which specifically stated that the accounts receivable were not to be adjusted to reflect uncollectibility. In accordance with the instructions of their clients, and in harmony with the explicit language of the purchase contract, the accounts receivable were not audited and the general ledger was adjusted downward to coincide with the accounts receivable ledger figures. Haskins and Sells then used that book

figure without audit and made appropriate exceptions to the accounts receivable in the balance sheet and qualified their accountants' opinion with a similar caveat.

The Haskins and Sells accountants were present when the Stephens people and the car rental companies' owners closed the deal on March 19, 1965. The evidence is conflicting as to whether the draft balance sheet and the accountants' opinion were circulated and reviewed at the closing. But following that meeting, Haskins and Sells put the audit information into final form and sent it to Stephens. Thereafter the accounting firm had no further business contact with appellants.

■ The first point on appeal essentially deals with the standard of care imposed on public accountants and the corresponding duty owed to non-privy third parties. The trial court ruled, by instructions given to the jury, that under the generally accepted rule articulated in Ultramares Corp. v. Touche, 255 N.Y. 170, 147 N.E. 441 (1931), third parties not in privity must prove fraud or misrepresentation as a predicate to recovery. Appellants urge that where third parties are known to be relying on the public accountant's work product, the latter should be liable for mere negligence. Before pursuing the correctness of this legal argument, we pause to note that this is a diversity case in which Colorado law is to be applied. And where, as here, there are no state court decisions on the issue, absent clear error we must defer to the trial court's judgment as to what the state courts would decide if confronted with the question. McConnico, Trustee v. Privett, 435 F.2d 261 (10th Cir. 1970); Nevin v. Hoffman, 431 F.2d 43 (10th Cir. 1970).

■■ In the many jurisdictions facing this issue, the rule and reasoning of Ultramares has predominated. Annot. 55 A.L.R.2d 324 (1957) and cases cited therein. In the practice of his profession, a public accountant may be held

liable for damages to his client resulting from either fraud or negligence. But as to third parties—even those who the accountant knew or should have known were relying on his audit—liability can be founded only upon fraudulent conduct, and proof of mere negligence will not suffice. To demonstrate clear error, appellants argue that Ultramares and its progeny are too narrow; that the rule is outdated and has been discarded by courts of last resort. Ergo, the Colorado Supreme Court would also repudiate Ultramares and the body of law developed around it. To substantiate this alleged trend, three cases are cited.

In Gammel v. Ernst & Ernst, 245 Minn. 249, 72 N.W.2d 364 (1955), Gammel sued the accounting firm for damages resulting from fraud and negligence in the auditing of a particular corporation's books. The court held that the trial court committed error in withdrawing the negligence question from the jury. At first blush the ruling would seem to support the proposition of appellants in the instant controversy. But there are distinguishing facts, the most significant of which is the existence of contractual privity between Gammel and the accounting firm. The corporation to be audited and Gammel jointly employed the accountants; both employers instructed Ernst & Ernst as to the scope of the audit; and each employer paid one-half of the accountants' fee. Under these facts, it is inaccurate to conclude that Minnesota has either wholly or partially repudiated Ultramares. Upon careful analysis it appears more appropriate to deduce that the case is but a restatement of the oft-cited rule that a public accountant may be held liable for his negligent performance to those in privity.

In the two other cases, definite inroads are made on the doctrine espoused in Ultramares. Rusch Factors, Inc. v. Levin, 284 F.Supp. 85 (D.R.I.1968), held that an accountant is liable in negligence for careless financial misrepresentations relied upon by actually foreseen and limited classes of persons. And in Ryan v.

Kanne, Iowa, 170 N.W.2d 395 (1969), the court rejected the rule that third parties not in privity are always barred from recovery for negligence of the party issuing the instrument upon which the third party relies to his detriment.

The burden on appellants to prove clear error, as referred to above, is a heavy one. While success in a case such as this does not necessarily depend on proving that a preponderance of jurisdictions support appellants' view of the law, there must be substantial evidence showing that Colorado would align itself with the developing trend. In that sense, appellants have failed to persuade us. Of the three cases cited, only the Ryan case can fairly be said to unequivocally represent a state's adoption of the rule propounded. The Rusch Factors case was an instance of a federal district court speculating as to what the state courts would do with the issue, and the Gammel case presents other deficiencies heretofore mentioned. Moreover, the argument is devoid of the substantive evidence necessary to convince this court that Colorado would part company with the rule applied by the trial court. Consequently, appellants have failed to carry the burden of establishing clear error.

The second allegation of error concerns both the law applicable to the case and the evidence adduced at the trial. Appellants urge that a public accountant may be held liable to non-privy third parties known to be relying on the audit, if in the course of the audit information is encountered, but not disclosed to relying third parties, which is substantially detrimental to the financial condition of the enterprise. Specifically, it is urged that Haskins and Sells knew and should have disclosed the status of the accounts receivable to appellants. The basis for this contention springs from the Restatement of Torts § 552(a). A vital element of that rule

which appellants fail to mention is that liability in those circumstances is contingent upon the failure "to exercise that care and competence in obtaining and communicating the information which its recipient is justifed in expecting." Even assuming that Colorado accepts this restatement of the law, the argument must fail. For the evidence is clear that Haskins and Sells did not fail to exercise the care and competence in disclosing the audit results which appellants were justified in expecting.

First, the evidence does not support the bald allegation that Haskins and Sells knew that certain accounts receivable were "obviously uncollectible" as of December 31, 1964. The undisputed testimony shows that until the accountants conducted the full audit on the accounts receivable, which they were instructed not to do, any conclusion about their uncollectibility would be irresponsible and in violation of accepted accounting procedures. Moreover, the accountants testified that they did not include in the book value figure any accounts receivable known to be uncollectible.

Second, the language in the purchase agreement between the car rental corporations and appellants leaves no doubt that the latter did not expect the accounts receivable to be adjusted to reflect uncollectibility. The obvious reason for Stephens' lack of concern here is the fact that he possessed a separate guarantee of accounts receivable from the sellers. Third, Morris Stephens twice testified that due to the expense of a full audit, and other representations of the then owners, the accounts receivable were not expected to be audited. And fourth, the care and competence of appellees is reflected in the notes attached to the balance sheet and in the separate accountants' opinion. In both places the accountants explicitly recited that the accounts receivable had not been adjusted to reflect collectibility.[1]

---

1. In the Accountants' Opinion: "Our examination was made in accordance with generally accepted auditing standards, and accordingly included such tests of

the accounting records and such other auditing procedures * * * as we considered necessary in the circumstances, excepting that in accordance

From this evidence, we are satisfied that appellees exercised the care and competence required of their profession. They followed the scope of audit as outlined by their clients, and carefully limited their work product results to coincide exactly with the undertaking. The charge that they consciously concealed crucial information from appellants simply will not stand under the evidence. The audit actually conducted by appellees was exactly what appellants bargained for with the sellers in the purchase agreement, and nothing less. Thus they have absolutely no grounds for saying they expected and had a right to receive more.

In their reply brief, appellants have attempted to expand the arguments heretofore considered. On the first issue, they amplified their contention to include an argument that they were in privity with appellees. On the second issue, they attempt to improve their position by contending they were third party beneficiaries to the contract between Haskins and Sells and the car rental companies. Appellees have had no opportunity to respond to these arguments by submitting a brief, so we have attempted on our own to locate the bases for these new arguments. After thoroughly perusing the amended complaint, the pre-trial order, the testimony and exhibits, the jury instructions, and the appellants' main brief, we are satisfied that these expansive arguments were not part of the legal theory upon which the case was tried. Hence, they are inappropriate for consideration on appeal.

Due to the disposition of the case at trial and on appeal, the issue of damages need not be considered. Likewise, it is unnecessary to comment on appellees' suggestion that affirmance could be based on their motion for directed verdict. The question there involved was one of fact which the trial court, in its discretion, properly submitted to the jury.

Affirmed.

---

with your instructions we did not request any of the customers to confirm their balances nor did we review the collectibility of any trade accounts receivable."

In the Notes to the Balance Sheet: "The balance shown on the balance sheets is the total of the daily accounts receivable records of the companies and has not been adjusted to reflect uncollectible accounts, the amount of which was not determined at December 31, 1964."