SEEDKEM, INC., an Indiana
Corporation, Plaintiff,

v.

Paul J. SAFRANEK, Defendant.

Civ. No. 78-0-477.

United States District Court,
D. Nebraska.

March 1, 1979.

Lyman Larsen, Omaha, Neb., for plaintiff.

Gareth G. Morris and Maureen E. McGrath, Omaha, Neb., for defendant.

## MEMORANDUM

DENNEY, District Judge.

This matter comes before the Court upon the defendant's motion to dismiss for failure to state a claim upon which relief can be granted [Filing # 7].

This is a diversity action, pursuant to 28 U.S.C. § 1332, brought by the plaintiff, an Indiana corporation, against the defendant, a resident of Nebraska and a Certified Public Accountant, duly authorized to practice in Nebraska.

The plaintiff contends that the defendant was retained by Agri-Products, Inc. for the purpose of maintaining their books and preparing their regular financial statements; that defendant was aware that the financial statements prepared by him were for distribution to the general public, particularly the plaintiff; and that defendant knew, or should have known, that the financial statements which he prepared would be issued by Agri-Products to businesses extending credit to Agri-Products, including plaintiff, and that the financial statements would be relied upon by businesses such as plaintiff.

Beginning in November of 1975, the plaintiff contends that in reliance on the statements and papers prepared by the defendant it advanced credit to Agri-Products in sums in excess of $700,000.00. Subsequently, plaintiff became aware that the financial statements were inaccurate due to the defendant's alleged negligence and that defendant allegedly knew that the financial statements with which he became associated did not conform to generally accepted accounting practices.

Plaintiff's second cause of action realleges the above allegations and states that the documents were "recklessly and wantonly" prepared by the defendant; that defendant knew that the financial statements did not conform to generally accepted accounting principles and that, in spite of this knowledge, defendant "recklessly and wantonly" allowed his name to become associated with the financial statements.

*Applicable Law*

■ In diversity cases, this Court will apply Nebraska's substantive laws, including its choice of laws principles. *Erie R. R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed.2d 1188 (1939); *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

■ Initially, it would seem necessary to undertake a consideration of Nebraska's choice of laws principles to determine whether to apply the substantive law of Nebraska (where the defendant resided and worked) or the substantive law of Indiana (the place of plaintiff's alleged reliance). However, neither of these states' highest courts has passed directly on the issues here raised. Therefore, the Court decides that both of these jurisdictions would look to the entire body of Anglo-American law, in making a determination of the issues in the instant case. *See Cudahy Co. v. American Labs. Inc.,* 313 F.Supp. 1339, 1342 (D.Neb. 1970).

*Discussion*

Any analysis of the law regarding an accountant's liability to third parties must essentially begin with an examination of Justice Cardozo's opinions in *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922) and *Ultramares Corp. v. Touche & Co.,* 255 N.Y. 170, 174 N.E. 441 (1931). In *Glanzer,* Cardozo held public weighers liable to a buyer of beans for breach of a duty to weigh the beans carefully. Reversing the New York appellate court, Cardozo wrote:

> We think the law imposes a duty toward buyer as well as seller in the situation here disclosed. The plaintiffs' use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction . . . assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed. We do not need to state the duty in terms of contract or of privity. Growing out of a contract, it has none the less an origin not exclusively contractual. Given the contract and the relation, the duty is imposed by law. *Glanzer v. Shepard, supra,* 233 N.Y. at 238–39, 135 N.E. at 275.

Subsequently, in *Ultramares,* Cardozo refused to hold accountants liable to the

plaintiff corporation which loaned money to another corporation in reliance on an inaccurate balance sheet certified by the accountants. The accountants did not know the exact persons to whom the financial statements would be shown, nor did they know that the statements would be submitted to the plaintiff. Cardozo, in questioning the wisdom of a duty owed to all who might foreseeably rely on financial statements which were negligently audited, noted:

> If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.
>
> *Ultramares v. Touche & Co., supra,* 255 N.Y. at 179, 174 N.E. at 444.

He also distinguished *Glanzer* on the basis that in *Glanzer:*

> . . . the transmission of the certificate to another was not merely one possibility among many, but the "end and aim of the transaction," as certain and immediate and deliberately willed as if a husband were to order a gown to be delivered to his wife . . . . The bond was so close as to approach that of privity, if not completely one with it. Not so in the case at hand. No one would be likely to urge that there was a contractual relation, or even one approaching it, at the root of any duty that was owing from the defendants now before us to the indeterminate class of persons who, presently

or in the future, might deal with the Stern Company in reliance on the audit. In a word, the service rendered by the defendant in *Glanzer v. Shepard* was primarily for the information of a third person, in effect, if not in name, a party to the contract, and only incidentally for that of the formal promisee.

*Ultramares v. Touche & Co., supra,* 255 N.Y. at 182–83, 174 N.E. at 445–446.

Since the decisions in *Glanzer* and *Ultramares,* the courts have wrestled with the difficult task of reconciling the two opinions. Some courts have refused to apply the reasoning in *Glanzer* to accountants, viewing *Ultramares* as holding that accountants owe no duty to those persons not in privity of contract.[1] *See, e. g., Stephens Industries, Inc. v. Haskins and Sells,* 438 F.2d 357 (10th Cir. 1971); *O'Connor v. Ludlum,* 92 F.2d 50 (2d Cir. 1937); *Investment Corp. of Fla. v. Buchman,* 208 So.2d 291 (Fla.App.1968); *State Street Trust Co. v. Ernst,* 278 N.Y. 104, 15 N.E.2d 416 (1938); *see also* 46 A.L.R.3d 978, 991–94 (1972).

However, in recent years, significant inroads have been made on the reach of the *Ultramares* decision and the rule of *Ultramares* has been weakened.[2] *See, e. g., Rhode Island Hosp. Trust Nat'l Bank v. Swartz, Bresenoff, Yavner & Jacobs,* 455 F.2d 847 (4th Cir. 1972); *Rusch Factors, Inc. v. Levin,* 284 F.Supp. 85 (D.R.I.1968); *Ryan v. Kanne,* 170 N.W.2d 395 (Iowa 1969); *Bonhiver v. Graff,* Minn., 248 N.W. 2d 291 (1976); *Shatterproof Glass Corp. v. James,* 466 S.W.2d 873 (Tex.Civ.App.1971); *see also* Restatement (Second) of Torts § 552 (1977); 46 A.L.R.3d 979, 989–91 (1972). Those counts which have diminished the impact of *Ultramares* have extended "the accountant's liability for negligence to those

---

1. There is a possibility that the courts could have relied on Cardozo's earlier decision in *Glanzer* and found "that an accountant owed a duty to those third persons whose potential reliance on the financial statements was specifically known to the accountant", rather than applying Cardozo's subsequent decision in *Ultramares* so rigidly through the requirement of privity. *Hochfelder v. Ernst & Ernst,* 503 F.2d 1100, 1107 (7th Cir. 1974), *reversed on other*

grounds, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

2. The attack on *Ultramares* was first launched by various law review writers who doubted the wisdom of that decision. *See* Leviton, *Accountants Scope of Liability for Defective Financial Reports,* 15 Hastings L.J. 436, 445 (1964); Seavey, *Mr. Justice Cardozo and the Law of Torts,* 52 Harv.L.Rev. 372, 400 (1939); Note, 36 Iowa L.Rev. 319, 327–28 (1951).

who, although not themselves foreseen, are members of a limited class whose reliance on the representation is specifically foreseen." *Bonhiver v. Graff, supra,* 248 N.W.2d at 301–302; *see also Hochfelder v. Ernst & Ernst, supra,* 503 F.2d at 1107. The reasoning underlying the "modern trend" away from *Ultramares* is explained by the court in *Rusch Factors, Inc. v. Levin, supra,* 284 F.Supp. at 91, as follows:

Why should an innocent reliant party be forced to carry the weighty burden of an accountant's professional malpractice? Isn't the risk of loss more easily distributed and fairly spread by imposing it on the accounting profession, which can pass the cost of insuring against the risk onto its customers, who can in turn pass the cost onto the entire consuming public? Finally, wouldn't a rule of foreseeability elevate the cautionary techniques of the accounting profession? For these reasons it appears to this Court that the decision in *Ultramares* constitutes an unwarranted inroad upon the principle that "[t]he risk reasonably to be perceived defines the duty to be obeyed." *Palsgraf v. Long Island R. R.,* 248 N.Y. 339, 344, 162 N.E. 99, 100, 59 A.L.R. 1253.

*Accord, Ryan v. Kanne, supra,* 170 N.W.2d at 401–02.

In light of the above discussion, the positions of the parties become apparent. The defendant's approach is two-fold. He would have this Court dismiss the complaint by either rigidly applying the no-privity, no-duty reasoning of *Ultramares,* or ask that the Court recognize that since this case involves both "unaudited" reports *and* no direct representations, it falls outside of those cases which have found accountants liable based on the "foreseeable plaintiff" theory. On the other hand, the plaintiff, of course, would ask the Court to reject the reasoning of *Ultramares* and embrace the "modern trend" of authority.

It must be remembered that as a diversity case, this Court is sitting as an "alter-ego" of the states of Indiana and Nebraska without any direct statement from those states' highest courts on the issue in question. Therefore, this Court must apply the rule which it believes the state court would, in all probability follow. *Luster v. Retail Credit,* 575 F.2d 609, 613 (8th Cir. 1978). In this instance, however, "the court may be guided by the law which in its opinion provides the most just and reasoned analysis." *Passwaters v. General Motors Corp.,* 454 F.2d 1270, 1278 (8th Cir. 1972).

The Court, for two reasons, does not believe that the *Ultramares* decision should be rigidly applied to the instant case. First, and foremost, the Court believes that this case is "qualitatively distinguishable" from *Ultramares. Rusch Factors v. Levin, supra,* 284 F.Supp. at 91. There, the plaintiff was a member of an undefined, unlimited class of remote lenders and potential equity holders who might have been foreseeable but not actually foreseen. Here the defendant's notes to the financial statements which were attached to his affidavit specifically identify the plaintiff as a party to a stock purchase agreement whereby plaintiff has the option of purchasing up to 80% of the common stock of Agri-Products, in addition to being mentioned as a creditor and responsible for Agri-Products' incorporation in Indiana. Second, in light of the overwhelming criticism and subsequent erosion of the viability of the *Ultramares* decision,[3] it is not so readily apparent that the state courts of the states of Indiana and Nebraska would cling to the outmoded and restrictive doctrine of privity as a precondition to a finding of accountant's liability. The Court notes that the Restatement (Second) of Torts § 552, takes the position that accountants may be liable to a third party,

---

**3.** The Court notes that the Court of Appeals for the Second Circuit, apparently applying New York law in *CIT Financial Corp. v. Glover,* 224 F.2d 44 (2d Cir. 1955), considered the case under the "primary benefit" theory discussed in *Ultramares,* rather than taking a strict privity of contract approach. More recently, the court in *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath,* 378 F.Supp. 112, 131 (S.D.N.Y.1974), stated that "[t]he law of New York as to an accountant's liability to third parties for negligent conduct is unclear."

with whom they are not in privity, for negligence in the preparation of a financial statement under certain circumstances. *See* Restatement (Second) of Torts § 552 (1977). Significantly, both jurisdictions, Indiana and Nebraska, have followed the position taken by the Restatement in the area of strict liability in tort, *see* Restatement (Second) of Torts § 402A (1965), and have abandoned the requirement of privity in that area. *See Filler v. Rayex Corp.*, 435 F.2d 336, 338 (7th Cir. 1970); *Kohler v. Ford Motor Co.*, 187 Neb. 428, 434–35, 191 N.W.2d 601, 606 (1971). Seemingly, these jurisdictions, when faced with the issue in question, could be expected to follow the position taken by the Restatement in this area as well and abandon the requirement of privity.[4]

However, the defendant argues that even if the Court finds the reasoning in *Ultramares* inapplicable, this case represents an extreme situation distinguishable from those cases which have rejected the privity requirement and found an accountant liable to a third party. Defendant points out that the cases cited by the plaintiff in support of its position all involved either certified or audited financial statements, *see, e. g., Rhode Island Hosp. Trust Nat'l Bank v. Swartz, Bresenoff,* Yavner & Jacobs, supra; *Rusch Factors v. Levin, supra; Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W.2d 378 (Mo.App.1973); *Shatterproof Glass Co. v. James, supra,* or express representations by the accountant to the third party as to the accuracy of the statements. *See, e. g., Ryan v. Kanne, supra; Bonhiver v. Graff, supra.* Defendant contends that this case, on the other hand, involves unaudited statements containing an express disclaimer of opinion without any contrary representation and is therefore thoroughly distinguishable.

While it seems doubtful that the plaintiff will be able to recover under the extreme circumstances presented herein, the Court believes that it would be premature to dismiss the complaint at this early stage of the litigation. As this court recently stated in *McAndrews v. Goody Co.*, 460 F.Supp. 104, 107 (D.Neb.1978):

A count contained within a complaint should not be dismissed for insufficiency "unless it appears to a certainty that [the claimant] is entitled to no relief under any state of facts which could be proved in support of the claim." *Morton v. Bldgs. of Neb., Inc. v. Morton Bldgs., Inc.,* 333 F.Supp. 187, 191 (D.Neb.1971). The standard is a rigorous one. The defendant's motion must fail unless "it appears beyond doubt that plaintiff cannot obtain any relief." *Seven-Up Bottling Co. v. Seven-Up Co.*, 561 F.2d 1275, 1282 (8th Cir. 1977). . . . As the Eighth Circuit held in *Winfrey v. Brewer,* 570 F.2d 761, 765 (8th Cir. 1978), "[i]t is enough to withstand a motion to dismiss that the plaintiff has made factual allegations which, accepted as true, state a basis for relief." As a practical matter, a dismissal for failure to state a claim upon which relief can be granted is likely to be ordered "only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Bramlet v. Wilson,* 495 F.2d 714, 716 (8th Cir. 1974). *Accord, Jackson Sawmill Co. v. United States,* 580 F.2d 302 (8th Cir. 1978).

■ The fact that the financial statements were expressly marked "unaudited" and contained an express disclaimer of opinion is not necessarily dispositive at this time. The observations and statements by

---

4. Moreover, a consideration of the position of these two jurisdictions in the area of an abstracter's liability to a third party proves interesting. The early Nebraska rule with respect to an abstracter's liability was on the order of strict privity. *Thomas v. Carson,* 46 Neb. 765, 65 N.W. 899 (1896). Subsequently, with the passage of the predecessor to Neb.Rev.Stat. § 76–501 (Reissue 1975), Nebraska law was

changed, extending liability to "any party" suffering damages. *See Ehlers v. Pound,* 176 Neb. 673, 126 N.W.2d 893 (1964); *Crook v. Chilvers,* 99 Neb. 684, 157 N.W. 617 (1916). In Indiana, the strict privity rule was held inapplicable where the abstracter has knowledge of a third party relying on his abstract. *Brown v. Sims,* 22 Ind.App. 317, 53 N.E. 779 (1899).

the Iowa Supreme Court in *Ryan v. Kanne, supra,* are particularly persuasive:

. . . Although in this profession a distinction is made between certified audits where greater time and effort are expended to verify book items, and uncertified audits where greater reliance is placed on book items, it is clear to us that accountants, or any other professional persons, must perform those acts that they have agreed to do under the contract and which they claim have been done in order to make the determination set forth and presented in their report. Their liability must be dependent upon their undertaking, not their rejection of dependability. They cannot escape liability for negligence by a general statement that they disclaim its reliability.

. . . . .

He must perform as agreed whether the work is certified or not. This being so, we have here fact questions as to the substance of the agreement between the parties, as to the care exercised in its performance, and as to the representation made, rather than whether the report was certified or uncertified. See *C.I.T. Financial Corp. v. Glover,* 2 Cir., 224 F.2d 44 (1955).

*Ryan v. Kanne, supra,* 170 N.W.2d at 404; *Accord, Coleco Indus. Inc. v. Berman,* 423 F.Supp. 275, 310 n. 60 (E.D.Pa.1976), *aff'd in part,* 567 F.2d 569 (3d Cir. 1977); *see also United States v. Natelli,* 527 F.2d 311, 320–21 (2d Cir. 1975), *cert. denied,* 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976).

Defendant accurately points out to the Court that there are no reported cases where an accountant's liability was founded on the circumstances presented at this point in the litigation; and the Court agrees that it should not adopt a theory beyond the ambit of those cases which have rejected the *Ultramares* rule and attempt such an extension of an accountant's duty. How-

ever, the Court believes that it would be wiser to defer a determination of the issue presented herein until further discovery proceedings can be undertaken in order to ascertain whether any express representations were actually made between the parties or any understandings existed between those involved.[5]

In light of the above discussion, the Court declines at this time to consider defendant's motion with respect to the second cause of action contained in plaintiff's complaint.

An order shall issue contemporaneously with this Memorandum Opinion.

---

5. The Court suggests that it would be appropriate for the defendant to reassert this motion as a motion for summary judgment as the discovery in this case continues and brings forth more evidence which could be put before the Court on the issue of the accountant's representations. The parties could submit competing affidavits addressing the considerations which the Court has discussed in this opinion.