183 N.J. Super. 417 (1982)
444 A.2d 66
H. ROSENBLUM, INC., A NEW JERSEY CORPORATION, SUMMIT GIFT GALLERIES, INC., A NEW JERSEY CORPORATION (FORMERLY KNOWN AS SUMMIT PROMOTIONS, INC.), HARRY ROSENBLUM AND BARRY ROSENBLUM, PLAINTIFFS-APPELLANTS,
v.
JACK F. ADLER ... [AND 426 OTHER NAMED DEFENDANTS LISTED IN THE COMPLAINT], INDIVIDUALLY AND AS PARTNERS TRADING AS TOUCHE ROSS & CO., SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued February 22, 1982.
Decided March 17, 1982.
*418 Before Judges BISCHOFF, KING and POLOW.
Bradley R. Brewer argued the cause for appellants (Cummins, Dunn, Horowitz & Pashman, attorneys; Bradley R. Brewer, of counsel and on the brief; I. Walton Bader, of counsel).
Leon Gold argued the cause for respondents (Schneider, Schneider & Balt, attorneys; Jacob Schneider on the brief).
The opinion of the court was delivered by BISCHOFF, P.J.A.D.
The issues presented by this appeal are whether an accountant who prepares an audit owes a duty of care to (1) a person with whom he has no privity and (2) a person who he has no reason to know would rely upon the audit at the time it was made.
Defendants, partners of Touche Ross & Co., a national accounting firm, performed annual financial audits for Giant, a public corporation. Giant was required to file audited financial statements as part of its annual report on Form 10K with the Securities and Exchange Commission. The audit for the fiscal year ending January 30, 1971 was issued by defendant on April 16, 1971. It is conceded that at that time neither Giant nor defendant had met or even heard of plaintiff.
*419 Approximately seven months after the 1971 audit was issued, in November 1971, plaintiffs, the owner of two retail catalog showrooms, first met with officers of Giant to discuss a merger. Soon thereafter Armin Frankel, a partner of defendant, became involved in the merger discussions as part of his duties as the "engagement partner" for the Giant account. In February 1972 Frankel was present at a series of meetings between plaintiff and Giant, and it is asserted that at this time Frankel knew that plaintiffs were in possession of the 1971 audit and were relying heavily upon it in evaluating the proposed merger.
An agreement of merger was executed March 9, 1972, and pursuant to it the parties merged June 12, 1972. Plaintiff asserts that defendant knew in March and April 1972 that Giant was manipulating its assets and earnings in order to conceal enormous losses. A 1972 audit of Giant was withdrawn by defendant on May 22, 1972. However, the 1971 audit was never withdrawn. Before the 1973 audit commenced, the deception was uncovered. Giant filed a petition in bankruptcy in September of 1973.
The record does not disclose precisely when defendants first recognized the falsity of Giant's financial records. Plaintiffs filed an amended complaint in four counts alleging (1) fraud, (2) negligence, (3) gross negligence and (4) breach of warranty. Defendants filed an answer and among the defenses raised asserted lack of privity of contract between plaintiff and defendant. Defendants moved for a partial summary judgment dismissing the plaintiffs' negligence claim insofar as it was based upon the 1971 audit of Giant, contending that since there was no privity between plaintiffs and defendants at the time the 1971 audit was performed there was no duty owed plaintiffs by defendants. The trial judge, relying upon Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 174 N.E. 441 (Ct.App. 1931), and Yuhas v. Mudge, 129 N.J. Super. 207 (App.Div. 1974), ruled that since at the time the audit was performed in 1971 defendants were not aware of the existence of plaintiffs, nor were plaintiffs members of a limited class foreseeably known to the *420 accountant to be likely to rely on the audit at the time of its preparation, there was no legal duty owed by defendants to plaintiffs.
A partial summary judgment was therefore entered dismissing plaintiffs' negligence claim based on the 1971 audit of Giant. All other negligence and fraud claims were reserved for trial.
With leave granted plaintiffs appeal from that summary judgment.
Of those jurisdictions that have considered the issue it is the majority rule that an accountant owes no duty of care to a person with whom he is not in privity of contract, if that person's reliance on the accountant's representation in the preparation of financial statements could not have reasonably been foreseen by the accountant at the time those representations were made. Ultramares Corp. v. Touche, Niven & Co., supra, 255 N.Y. 170, 174 N.E. 441; 2 Restatement, Torts 2d, § 552 at 127 (1977); Annotation, "Liability of Public Accountant to Third Parties," 46 A.L.R.3d 979 (1972).
Defendant in Ultramares was a public accountant regularly employed by the Fred Stern Company to prepare and certify balance sheets showing its financial status. Defendant knew that Stern's suppliers, customers and creditors would rely on the sheets in dealing with Stern. For this reason it issued 32 identical balance sheets for Stern's use. Yet, defendant did not know any of the parties who would ultimately rely on these balance sheets. Specifically, defendant did not know plaintiff, a corporation that had made no loans to Stern at the time the balance sheets were prepared. Plaintiff sued defendant when it discovered Stern had been insolvent when the balance sheets were prepared and had falsified its books to conceal its true financial status. Chief Judge Cardozo, speaking for the court, held that while defendant had been negligent in the preparation of the balance sheets it owed no duty to the plaintiff whom defendant did not know and with whom it had not entered into a contract at the time the accounting was performed. After excluding liability for fraud, Judge Cardozo said:

*421 If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences. [Ultramares, 174 N.E. at 444]
In distinguishing liability for negligence from liability for fraud in this context, the court said:
Our holding does not emancipate accountants from the consequences of fraud. It does not relieve them if their audit has been so negligent as to justify a finding that they had no genuine belief in its adequacy, for this again is fraud. It does no more than say that, if less than this is proved, if there has been neither reckless misstatement nor insincere profession of an opinion, but only honest blunder, the ensuing liability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made. We doubt whether the average business man receiving a certificate without paying for it, and receiving it merely as one among a multitude of possible investors, would look for anything more. [Id. 174 N.E. at 448]
And while recognizing the hastening pace of the "assault on the citadel of privity," the court which had decided MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (Ct.App. 1916), 15 years earlier refused to abolish the doctrine under these circumstances. Id. at 445, 111 N.E. 1050. The Ultramares case was decided squarely on the lack of privity between the accountant and the third party.
While some courts have continued to uphold this strict privity defense, e.g., Stephens Industries, Inc. v. Haskins & Sells, 438 F.2d 357 (10 Cir.1971), most cases decided since then have advanced somewhat beyond that restrictive approach. White v. Guarente, 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (Ct.App. 1977). Illustrative cases are Mallis v. Bankers Trust Co., 615 F.2d 68, 81-83 (2 Cir.1980), cert. den., 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981); North American Co. for Life & Health v. Berger, 648 F.2d 305 (5 Cir.1981), reh. den., 655 F.2d 235 (1981); Milliner v. Elmer Fox & Co., 529 P.2d 806, 808 (Utah Sup.Ct. 1974); R.I. Hosp. Tr. Nat'l Bk. v. Schwartz, Bresenoff, Yavner & Jacobs, 455 F.2d 847 (4 Cir.1972); Rusch Factors, Inc. v. Levin, 284 F. Supp. 85 (D.R.I. 1968); Lucas v. Hamm, 56 Cal.2d *422 583, 15 Cal. Rptr. 821, 364 P.2d 685 (Sup.Ct. 1961), cert. den., 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962).
One of the reasons advanced for expanding the scope of an accountant's liability is the opinion that an innocent reliant party should not be forced to carry the weighty burden of an accountant's professional malpractice. It is argued the risk of loss is more easily distributed and fairly spread by imposing it on the accounting profession, which can pass the cost of insuring against the risk on to its customers who, in turn, can pass it along to the entire consuming public. Rusch Factors, Inc. v. Levin, supra, 284 F. Supp. at 91; Coleco Industries, Inc. v. Berman, 423 F. Supp. 275 (E.D.Pa. 1976), aff'd in relevant part, 567 F.2d 569 (3 Cir.1977), cert. den. 439 U.S. 830, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978).
Defendants respond to this argument by pointing to the facts of this case. Giant's bankruptcy has resulted in claims against defendant Touche Ross & Co. of $100,000,000 in eight lawsuits. Defendants contend that no insurance company will protect against such liability, at least not at a premium that accountants could long endure.
Section 552 of the Restatement, Torts, provides:
(1) One who in the course of his business, profession or employment or in any other transaction in which he has pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3),[1] the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

*423 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction (emphasis supplied). [sic]
The commentary to this section provides, in part:
... [i]t does not follow that every user of commercial information may hold every maker to a duty of care. Unlike the duty of honesty, the duty of care to be observed in supplying information for use in commercial transactions implies an undertaking to observe a relative standard, which may be defined only in terms of the use to which the information will be put, weighed against the magnitude and probability of loss that might attend that use if the information proves to be incorrect. A user of commercial information cannot reasonably expect its maker to have undertaken to satisfy this obligation unless the terms of the obligation were known to him. Rather, one who relies upon information in connection with a commercial transaction may reasonably expect to hold the maker to a duty of care only in circumstances in which the maker was manifestly aware of the use in which the information was to be put and intended to supply it for that purpose.
The majority rule as it has evolved since Ultramares imposes liability upon the accountant only if he knew or should have known at the time he performed the work that the plaintiff or one of a limited group of persons for whose benefit and guidance he intended to supply the information was the intended beneficiary of his work. Rusch Factors, Inc. v. Levin, supra (where the accountant knew that he was preparing financial statements for the sole purpose of their being used by a single potential lender to his client, i.e., that this was the "very aim and purpose" of his accounting work); R.I. Hosp. Tr. Nat'l Bk. v. Schwartz, Bresenoff, Yavner & Jacobs, supra (where a loan agreement between a borrower and the bank expressly required the borrower to furnish audited financial statements to the bank and the accountant knew this was the sole purpose of his work); Coleco Industries, Inc. v. Berman, supra (where the accountants knew the financial statements of a closely-held corporation they prepared were to be used solely by the corporations' five stockholders in dealing with an acquiring company); Ryan v. Kanne, 170 N.W.2d 395 (Iowa Sup.Ct. 1969) (where the accountants were hired to prepare financial statements for the sole purpose of obtaining new financing and were directed to consult with the lender to determine what specific information would be required); *424 Aluma Kraft Mfg. Co. v. Elmer Fox & Co., 493 S.W.2d 378 (Mo. App. 1973) (where a contract for the sale of stock fixed the price of the stock based upon book value as determined by the financial statements the accountants were to prepare and the accountants knew that this use was the sole purpose of their work); Shatterproof Glass Corp. v. James, 466 S.W.2d 873 (Tex.Civ.App. 1971) (where the accountants knew that the financial statements they prepared would be used only to obtain financing from a bank by plaintiff in considering whether to make their client a distributor of its products).
While we are not aware of any New Jersey case which considers this precise issue, the general principle enunciated in Ultramares has been adopted in several New Jersey cases. In Yuhas v. Mudge, supra, 129 N.J. Super. 207, the plaintiff was injured by a dangerous product advertised for sale in defendant's magazine. Citing Ultramares, this court held that the publisher owes no duty to his readers to determine the safety of products advertised in his magazine. We have also adopted an analogous principle in refusing to extend an attorney's duty of care to those with whom he had neither a contractual nor a fiduciary relationship. See Stewart v. Sbarro, 142 N.J. Super. 581 (App.Div. 1976), certif. den., 72 N.J. 459 (1976); Ackerman v. Lagano, 172 N.J. Super. 468, 471 (Law Div. 1979).
We are of the view that the moderate rule as expressed in § 522 of the Restatement, Torts 2d is the better view and we adopt it. We hold that the liability of an accountant for negligence is to be measured by a duty owed to one with whom he is in privity or one of a limited group of persons for whose benefit and guidance he intends to supply the information or to whom he knows the recipient of his report will supply it. However, even under this rule plaintiffs must fail. It is conceded that the merger was not contemplated for at least seven months after defendants' 1971 report was completed and filed. When defendants prepared that 1971 audit there was no suggestion that plaintiffs or any one of a similar limited group would place reliance upon it for merger purposes.
*425 We affirm the summary judgment entered in the trial court dismissing plaintiffs' complaint insofar as it seeks to impose liability based on preparation of the 1971 audit. We do not express any opinion on the admissibility of this 1971 audit in relation to other counts of the complaint.
NOTES
[1] Subsection (3) deals with the liability of one under a "public duty" such as a notary public, recording clerk or other public officer to provide information for the protection of a class of persons.