**ALUMA KRAFT MANUFACTURING COM-PANY, a corporation, et al., Plaintiffs,**

**Solmica, Inc., a corporation, Plaintiff-Appellant,**

v.

**ELMER FOX & COMPANY, Certified Public Accountants, a partnership, et al., Defendants-Respondents.**

No. 34635.

Missouri Court of Appeals,
St. Louis District,
Division Two.

Feb. 6, 1973.

Motion for Rehearing or for Transfer to Supreme Court Denied March 9, 1973.

Application to Transfer Denied May 14, 1973.

Ackerman, Schiller & Schwartz, Michael A. Gross, Clayton, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, Donald L. James, William L. Davis, St. Louis, for defendants-respondents.

SIMEONE, Judge.

Plaintiff Solmica, Incorporated, (hereinafter Solmica), appeals from a judgment of the Circuit Court of St. Louis County entered April 18, 1972, dismissing with prejudice Solmica's amended petition against defendants Elmer Fox & Company, certified public accountants, a partnership, (hereinafter Fox). Solmica's amended petition, containing two counts, sought damages against Fox and its individual partners for negligently performing an audit and expressing an unqualified opinion regarding a balance sheet of its client which was allegedly relied on by Solmica in the purchase of the stock of Aluma Kraft Manufacturing Company to its damage. Fox moved to dismiss the amended petition on the grounds that the petition failed to state a claim, and there was a lack of privity between Solmica and Fox. The action was originally instituted by Aluma Kraft and Solmica, but the amended petition was in the name of Solmica only.

The issue presented, one of first impression in this state, is whether the defendants, certified public accountants, are under a duty to exercise due care to protect a third party from economic injury and are liable for damages caused by their alleged negligence, even though there is a lack of privity of contract. Or in other words, the issue is whether a third party not in privity with a public accountant has a claim against the accountant for an alleged negligent audit opinion which is relied on by the third party to its damage.[1]

We hold that under the allegations of Count II of the amended petition the third party has such a claim although there is no privity, and reject the rule that a third party not in privity is always barred from recovery for ordinary negligence of the accountant who expresses an unqualified opinion upon which the third party relies to its detriment. Therefore, we reverse and remand for further proceedings.

Solmica's amended petition, filed on October 27, 1971, was in two counts. The first count was based on the ground that the auditors failed to comply with professional standards in making an audit; the second count was based on the alleged negligence of the auditors. The petition alleged that for many years Fox & Company had been the regular auditors for Aluma Kraft, and one T. J. Bottom was the president, chief executive officer, principal director and owner of substantially all of the shares of Aluma Kraft. The petition alleged that in April of 1969 negotiations were entered into between Bottom and Solmica concerning the acquisition of eighty percent of the shares of Aluma Kraft which resulted in a contract specifying that the purchase price of the shares of stock would be the book value of the shares as of June 30, 1969. The contract further provided that Bottom ". . . shall cause to be prepared by Aluma Kraft's auditors an interim financial statement reflecting the operations of the business from January 1, 1969, through June 30th, 1969, consisting of a profit and loss statement and balance sheet . . . showing the financial condition of said business at that date", and that the statement would be prepared in accordance with generally accepted accounting standards. Fox was engaged and Solmica alleges that ". . . in contemplation that the [financial statement] would be utilized by plaintiff, SOLMICA, INC., the defendant auditors furnished to ALUMA KRAFT its formal report setting forth the scope and opinion . . . ." The opinion directed to the Board of Directors of Aluma Kraft stated that the balance sheet of Aluma Kraft had been examined and the examination was made in accordance with generally accept-

[1]. See cases collected in Annot., Liability of Public Accountant to Third Parties, 46 A.L.R.3d 979.

ed auditing standards. The report stated that "In our opinion, the accompanying balance sheet presents fairly the financial position of Aluma Kraft Manufacturing Company at June 30, 1969 . . ." Thereafter, and in reliance on the report, the petition states that Solmica closed the transaction for the purchase of the stock at the sale price ". . . computed in accordance with the balance sheet as determined by the defendant auditors in its formal audit statement", and paid the sum of $229,090.40. Later, the other twenty percent of the shares was also purchased.

Solmica then alleged that the auditors failed to conduct their examination in accordance with generally accepted auditing standards and failed to furnish an opinion in conformity with generally accepted accounting principles. Solmica listed some thirteen separate items which were allegedly inaccurate or misleading and which resulted in the book value of Aluma Kraft's stock being erroneously stated in the amount of $150,000.00 in excess of its true value. Paragraph 11 of the petition alleged that ". . . the defendant auditors knew that the said audit was being prepared for the purpose of determining the amounts which plaintiff SOLMICA would pay for the ALUMA KRAFT shares, and that the plaintiff SOLMICA would rely upon the said audit."

The second count incorporated by reference the above allegations and alleged negligence and carelessness in preparing the audit so that the information certified was false, inaccurate and misleading and did not fairly present the financial position of Aluma Kraft.

The Circuit Court sustained defendant's motion to dismiss with prejudice and designated the order a final appealable order. Solmica then perfected its appeal to this court.

Solmica contends that the defendants, certified public accountants, having negligently performed an audit and having rendered an unqualified opinion, are liable to it without regard to contractual privity. Solmica urges that such liability may be grounded upon (1) a duty imposed by the Missouri Statutes and the rules and regulations governing the professional conduct of the accountant, and (2) common law negligence.

On the other hand, the defendants urge that the long-standing rule of privity should be retained and that ". . . an accounting firm is liable only to the person or firm with which it is in contractual privity when the claimed liability is based on ordinary negligence" when such alleged negligence causes harm to intangible economic interests.

■ In determining whether the petition filed states a claim, we assume as true all facts well pleaded and give the appellant the benefit of every favorable inference to be drawn from the facts pleaded. Parker v. Sherman, Mo., 456 S.W.2d 577 [2].

Plaintiff contends that Count I of the petition states a claim based upon the Missouri Statutes regulating the conduct and establishing the standards for accountants, § 326.111, RSMo 1969, V.A.M.S., and inferentially upon the various codes of professional conduct.[2] In effect, Solmica contends that the statutes and rules create a cause of action based on negligence without regard to privity.

■■ We believe that the statutes and rules of professional practice establish certain legislative and professional standards of care to be observed by accountants in the performance of their duties and may assist in the determination of the standard of reasonable care required of the account-

**2.** Code of Professional Ethics and Interpretive Opinions, American Institute of CPAs, New York, 1972 Ed.; Auditing Standards and Procedures, American Institute of CPAs, New York, 1963; Missouri Law Regulating the Practice of Public Accountancy and Rules of Professional Conduct of Missouri State Board of Accountancy, 1967.

ant. However, §§ 326.111 and 326.120(12), which impose criminal penalties for the violation of Chapter 326, do not demonstrate that a civil action is created independently from an action for common law negligence. Criminal sanctions against doing or not doing some act do not automatically include authority for civil actions. Heembrock v. Stevenson, Mo.App., 387 S.W.2d 263. Therefore, we hold that Count I of the petition fails to state a claim. We now turn to Count II, which alleges common law negligence.

The *precise* issue to be determined under these facts is whether an accounting firm may be liable to a third party not in privity when it is alleged that the public accountant knows the audit would be utilized and relied upon by the plaintiff, and knows the audit was being performed for the purpose of determining the price the plaintiff would pay for the shares of stock.

The accountant's liability to a third person not in privity with him for ordinary negligence, as distinguished from fraud, begins with the well-known decision by Mr. Justice Cardozo in Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441. The New York Court of Appeals held that the firm of accountants could be held responsible for fraud but rejected the accountants' liability for ordinary negligence. Discussing the question as to whether the accountants were under a duty to third persons, Justice Cardozo stated:

> "A different question develops when we ask whether they owed a duty to [creditors and investors] to make it without negligence. If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate

class." *Ultramares,* supra, 174 N.E. at 444.

> ". . . [L]iability for negligence is one that is bounded by the contract, and is to be enforced between the parties by whom the contract has been made." *Ultramares,* supra, 174 N.E. at 448.

The court held that since ". . . public accountants are public only in the sense that their services are offered to any one who chooses to employ them", privity or a bond so close so as to approach privity is essential to impose liability upon the public accountant.[3]

*Ultramares* distinguished a previous decision also written by Justice Cardozo, Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 23 A.L.R. 1425. In *Glanzer,* the seller of a large quantity of beans requested the defendants, who were engaged in business as public weighers, to weigh the beans and to furnish the plaintiff buyers with a copy of the certified weight sheets. The actual weight was less than that certified and the buyers brought suit for damages. The defendants were held responsible. *Glanzer* was distinguished in *Ultramares* in that *Glanzer* was a case ". . . where the transmission of the certificate to another was not merely one possibility among many, but the 'end and aim of the transaction,' . . . The bond was so close as to approach that of privity, if not completely one with it." *Ultramares,* supra, 174 N.E. at 445–446.

The necessity of privity of contract when a petition is based on ordinary negligence was decided recently by our Supreme Court in Westerhold v. Carroll, Mo., 419 S.W.2d 73. An action was brought by an indemnitor of a surety on a performance bond against an architect for incorrectly certifying the amount of material furnished and work performed in the construction of a church. There was no privi-

---

3. The wisdom of the decision in *Ultramares* has been doubted. Levitin, Accountants' Scope of Liability for Defective Financial Reports, 15 Hastings L.J. 436,

445; Seavey, Mr. Justice Cardozo and the Law of Torts, 52 Harv.L.Rev. 372, 400; Note, 36 Iowa L.Rev. 319, 327–328.

ty between the defendant architect and the indemnitor or surety. The Supreme Court rejected the rule requiring privity and held that the petition stated a claim against the architect. It was pointed out that the requirement of privity stems from Winterbottom v. Wright, 10 M. & W. 109, 152 Eng.Rep. 402. The rule of privity was based on two principal grounds. First, the apprehension that a right of action would lead to excessive and unlimited liability and to endless complications. "In Winterbottom v. Wright, this ground was stated this way: 'If we were to hold that the plaintiff could sue in such a case, there is no point at which such actions would stop. The only safe rule is to confine the right to recover to those who enter into the contract: if we go one step beyond that, there is no reason why we should not go fifty.' " *Westerhold,* supra, at 77. Second, if privity was abolished it would restrict and embarrass the right to make contracts by burdening the parties with obligations and liabilities to others which parties would not voluntarily assume. Holding that neither of these grounds was present, the Supreme Court held that privity was not required.

"In this case, as in Glanzer v. Shepard, the person not in strict privity of contract who would be injured by defendant's negligence was known, and the 'end and aim' of the provision of the contract with respect to payments was for the benefit of the surety, as well as for the owner. Also, to forego the requirement of privity of contract could not lead to excessive and unlimited liability or lead to endless complications in following out cause and effect . . . No exposure to liability to an unlimited number, or to an indeterminate class, of potential claimants is involved . . . The factual situation of this case does not expose the defendant, or architects generally, 'to a liability in an indeterminate amount for an indeterminate time to an indeterminate class' . . . "

*Westerhold,* supra, at 79.

Hence, the court concluded that the reasons for the rule of privity were not applicable to the facts, and " . . . as a matter of logic we perceive no reason why in such a situation privity should be required . . . " *Westerhold,* supra, at 79. See also Slate v. Boone County Abstract Co., Mo., 432 S.W.2d 305. Compare *Slate,* supra, with Anderson v. Boone County Abstract Co., Mo., 418 S.W.2d 123. In our reading of *Westerhold* there was nothing in the opinion which would prohibit a holding that liability could not be extended to a third person, although not identified, when the author of the report or certificate knows the recipient of the certificate or report intended to supply the information, although the exact identity of the third person was not actually known.

While not abandoning the doctrine of privity under all circumstances, *Westerhold* held that the extension of limits of liability should be done on a "case-to-case basis" and where the third party is known, the requirement of privity is not applicable. We believe that *Westerhold* and *Glanzer* are authority to reject the requirement of privity under the facts here.

The liability of the accountant has been discussed in recent years. The view that the rule of privity is to be rejected as to those third persons for whose benefit and guidance the accountant intends to supply the information, or knows that the recipient of the audit intends to supply such information to a limited class of persons, has been upheld in recent decisions and has been adopted by the Restatement of the Law, Second, Torts, § 552, Tentative Draft No. 12.[4] Ryan v. Kanne, Iowa, 170 N.W.

---

4. Restatement of the Law, Second, Torts, Tentative Draft No. 12, § 552, p. 14. "(1) One who, in the course of his business, profession or employment, or in a transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information,

2d 395; Shatterproof Glass Corp. v. James, Tex.Civ.App., 466 S.W.2d 873; Rusch Factors, Inc. v. Levin, D.C.R.I., 284 F.Supp. 85; R. I. Hosp. Tr. Nat. Bk. v. Swartz, Bresenoff, Yavner & Jacobs, 4th Cir., 455 F.2d 847. These cases and the Restatement of the Law extend liability to third parties for whose benefit and guidance the accountant supplies the information, or to such third persons, although not identified, who the accountant knows the recipient of the audit intends to supply such information.

We also reject the privity requirement when, as alleged in the petition, the accountant knows the audit is to be used by the plaintiff for its benefit and guidance, or knows the recipient intends to supply the information to prospective users, such as the plaintiff here. Therefore, we hold that a third party in such situations, although not in privity, has a claim for the alleged negligence of an accountant who renders an unqualified opinion upon which the third person relies to its detriment.

■ The determination of whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of several factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that the plaintiff suffered injury; and (4) the closeness of the connection between the de-

fendant's conduct and the injury suffered. *Westerhold,* supra, 419 S.W.2d at 81. We believe that these policy factors are satisfied in this case.

■ The allegations of the amended petition filed by Solmica bring this case within our holding and the decisions of *Westerhold* and *Slate,* supra. The allegations are that the defendants knew the financial statement and opinion would be utilized by the plaintiff Solmica. The petition stated that " . . . in comtemplation that [the report] would be utilized by plaintiff . . . the defendant auditors furnished . . . its formal report setting forth the scope and opinion of the audit . . ." The petition further stated that the " . . . auditors knew that the said audit was being prepared for the purpose of determining the amounts which plaintiff . . . would pay for the ALUMA KRAFT shares, and that the plaintiff . . . would rely upon the said audit." These allegations are sufficient to show that Fox knew its opinion would be utilized by the plaintiff, knew a purchase of the stock was contemplated, knew the purchase price was to be computed based upon the audit, and knew the audit would be furnished to the purchasers, Solmica. Therefore, these allegations are sufficient to state a claim for relief.

Our rejection of the requirement of the strict rule of privity in this case comports with the concepts of the functions and duties of the modern public accountant,[5] the

---

if he fails to exercise reasonable care or competence in obtaining or communicating the information. (2) Except as stated in subsection (3), the liability stated in subsection (1) is limited to loss suffered (a) by the person or one of the persons for whose benefit and guidance he intends to supply the information, or knows that the recipient intends to supply it; and (b) through reliance upon it in a transaction which he intends the information to influence, or knows that the recipient so intends, or in a substantially similar transaction. (3) The liability of one who is under a public duty to give the information extends to loss suffered by

any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

5. Wyatt, Auditors' Responsibilities, 12 St. Louis U.L.J. 331, 333; § 326.011(5)(d), RSMo, 1969, V.A.M.S. Modern accounting stresses independence and competence. "Under present conditions, the principal effect of the auditor's opinion to management is to meet the requirements of, and influence the actions of, third parties with whom the auditor has no contract." Comment, 44 Wash.L.Rev. 139, 178. See also Solomon, Ultramares

purposes of a modern audit, is consistent with the developments of the liability of an accountant under the securities laws [6] and is consistent with the recent developments in England where the doctrine of privity was born.[7]

Respondents rely on *Anderson,* supra. *Anderson* does not control this case because the abstracter did not know the certificate would be utilized by the plaintiffs, and the plaintiffs were held to be too remote from the defendant to allow the recovery. Respondents also argue that since T. J. Bottom dealt with the defendants and not Aluma Kraft, plaintiff would be precluded from recovery under the rationale of *Anderson.* But Bottom was the president, director and sole stockholder of Aluma Kraft, and for all practical purposes, Fox was the auditor for Aluma Kraft and Bottom.

Respondents rely on numerous cases where privity was held to be a proper defense to an action maintained by a party damaged by the alleged negligent statement or report prepared by an accountant. O'Connor v. Ludlam, 2d Cir., 92 F.2d 50, is inapplicable to the present case because it was an action of deceit. The appellate court did not rule on the negligence issue

or have it under consideration on appeal, but merely explained the judgment of the trial court and the basis given. State Street Trust Co. v. Ernst, N.Y., 278 N.Y. 104, 15 N.E.2d 416, is not controlling. The case, however, did modify the holding of *Ultramares* and allowed recovery by a third party not in privity with the defendants in cases of gross negligence. See Hawkins, Professional Negligence and Liability of Public Accountants 256, 276 in Roady & Anderson, Professional Negligence. The holding in *Ernst* was adopted by Duro Sportswear, Inc. v. Cogen, Sup., 131 N.Y.S.2d 20, aff'd 285 App.Div. 867, 137 N.Y.S.2d 829. The decision in *Cogen* is not controlling since *Westerhold* requires only proof of ordinary negligence in order to impose liability in favor of a plaintiff not in privity with the defendant.

Respondents also rely on the decision of Texas Tunneling Co. v. City of Chattanooga, 6th Cir., 329 F.2d 402. This case has diminished precedential value due to developments after the decision was rendered. The federal appellate court, sitting in Tennessee, was applying the law of Tennessee in denying recovery to a party not in privity with the defendant. The court based its decision on Howell v. Betts, 211 Tenn. 134, 362 S.W.2d 924, a case in which the Su-

Revisited, A Modern Study of Accountants' Liability to the Public, 18 DePaul L.Rev. 56, showing how the language in *Ultramares* as to the responsibility of the auditor is no longer true today. Contrast the view of the public accountant in *Ultramares* that the accountant is *public only in the sense that their services are offered to anyone who chooses to employ them with the view in Bradley, Liability to Third Persons for Negligent Audit, 1966 J. of Bus.Law 190, 196. There it is said, "The legal duties of the auditor ought to be co-extensive with his professional pretensions. He aspires to more than being a rubber stamp for management, so his legal duties ought to go beyond that status . . . ."

6. 15 U.S.C.A., § 77k; 15 U.S.C., § 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5; Fischer v. Kletz, S.D.N.Y., 266 F.Supp. 180; Escott v. BarChris Construction Corp., S.D.N.Y., 283 F.Supp. 643;

Kurland, Accountant's Legal Liability, Ultramares to BarChris, 25 Bus.Law 155; Comment, 9 B.C.Ind. & Comm.L.Rev. 137; Comment, Certified Public Accountants' Liability for Unaudited Statements, 8 Cal.Western L.Rev. 368.

7. Hedley Byrne & Co. Ltd. v. Heller & Partners Ltd. [1964] A.C. 465 [H.L.] [bankers]. Cf. Candler v. Crane, Christmas & Co., [1951] 1 All Eng.Law Rep. 426, and Lord Denning's dissent. The English experience is interesting: "When English accountants were faced with liability *to third parties for negligence by the Hedley decision, they, as are their American counterparts, were concerned. However, when they realized that liability would be imposed upon them only for negligence and only to a foreseeable group, they accepted the change in the law with good grace." Comment, 41 St. John's Law Rev. 588, 600–601.

preme Court of Tennessee declined to relax the privity requirement where the plaintiffs had purchased land twenty-four years after the survey of the land had been completed by the defendant. The court refused to allow the plaintiffs to recover damages from the defendant because of remoteness and because a contrary result would expose a party to any and all purchasers to the end of time. The value of the decision was eroded by the subsequent decision of Tartera v. Palumbo, Tenn., 453 S.W.2d 780. In that case the Tennessee Supreme Court examined a situation involving a negligent survey by the defendant where the defendant was aware of the identity of the plaintiffs and the purpose of the transaction. The court found that the plaintiffs, although not in privity with defendant, should be entitled to recover damages incurred as a result of the defendant's negligent preparation of a subdivision plot. The court held that *Howell* and *Ultramares* were inapplicable and arrived at the decision through reliance upon *Glanzer* and § 552 of the Restatement of Torts, 2d, Tentative Draft No. 11.

Respondents also rely on Investment Corp. of Florida v. Buchman, Fla.Dist.Ct. of App., 208 So.2d 291. The defendants accountants in that case apparently had knowledge of the particular plaintiff and the transaction which would be consummated on the basis of their uncertified financial statement. The court stated that the negligence action of the plaintiff, who was not in privity with the defendants accountants, was one of first impression in Florida, but the court felt confined by the decision of the Florida Supreme Court in Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195, and denied relief. The federal district court in Rhode Island dismissed the holding of *Buchman* in the *Rusch* case; *Buchman* was considered an incorrect decision because of its failure to either perceive or to give weight to the distinction between *Ultramares* and *Glanzer*. We have examined the other cases cited by the respondents and do not believe they control this case.

In conclusion, we hold the amended petition filed by Solmica states a claim for relief against respondents Fox & Company although there is no privity of contract between Solmica and the respondents.

Therefore, the judgment of the Circuit Court is reversed and remanded for further proceedings.

SMITH, P. J., and KELLY, JJ., concur.