HARBOR INSURANCE
COMPANY, Appellant,

v.

Norman M. ESSMAN; Stanley E. Feldman; Richard S. Glassman; Fred S. Flegel; Richard M. Flom; Marshall N. Myers, all of the above named defendants as representatives of the partners of Alexander, Grant & Co. now known as Grant, Thornton, Appellees.

No. 89–2647.

United States Court of Appeals,
Eighth Circuit.

Submitted April 12, 1990.
Decided Nov. 5, 1990.

9. *See supra* footnote 1.

Linda E. Unger, Chicago, Ill., for appellant.

Stanley Parzen, Chicago, Ill., for appellees.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and BOWMAN, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Harbor Insurance Company issued a Directors and Officers insurance policy (D & O policy) to Tiffany Industries, Inc. and ultimately paid a series of claims brought against Tiffany's officers and directors. Thereafter Harbor sued the representatives of Alexander Grant & Company, an accounting firm, claiming that materially false and misleading financial statements prepared by Grant for Tiffany led to Harbor's expenditure of sums for settlement of claims and attorneys' fees. The district court[1] dismissed claims for negligent and deliberate misrepresentation on the ground that they failed to state claims under Missouri law, and dismissed conspiracy and subrogation claims because they were barred by the statute of limitations. On appeal, Harbor argues that the complaint adequately pleaded claims for negligent and deliberate misrepresentation under Missouri law, and that the statute of limitations did not bar the other claims, primarily because of provisions in a stipulation between the parties regarding the dismissal of an earlier action. We affirm the judgment of the district court.

Tiffany and its officers and directors became enmeshed in substantial litigation, including a suit brought by the Securities Exchange Commission. The D & O policy Harbor had issued was in effect for the period of time involved in the litigation. The claims were ultimately settled or dismissed and thereafter, litigation between Tiffany, its officers and directors, and Harbor commenced.

Tiffany sued Harbor in Missouri state court in January 1981 to recover $435,000 that Tiffany had expended in defense of the SEC lawsuit. Harbor removed the action to the United States District Court for the Western District of Missouri and filed a third party complaint seeking indemnity from Grant and Sheldon Enger, the former managing partner of Grant's St. Louis office. The case was transferred to the Eastern District of Missouri at Harbor's re-

---

1. The Honorable William L. Hungate, United States District Court Judge for the Eastern District of Missouri.

quest in 1983. The district court granted a motion to dismiss Harbor's third party complaint against Grant, because as a partnership it was not an entity capable of being sued under Missouri law. The district court also ruled that Harbor had not stated a claim against Enger for indemnification or contribution, but found that Harbor "may have a distinct cause of action against Enger on the theory of negligent preparation of a financial statement." *Tiffany Indus., Inc. v. Harbor Ins. Co.*, 536 F.Supp. 432, 434 (W.D.Mo.1982). Relying upon *Aluma Kraft Mfg. Co. v. Elmer Fox & Co.*, 493 S.W.2d 378 (Mo.Ct.App.1973), the district court found that Enger could be held liable if Harbor proved that (1) Enger knew the financial statements would be utilized by Harbor; (2) knew the statements were being prepared for the purpose of persuading Harbor to issue an insurance policy; (3) knew that Harbor would rely on the statements; and (4) that the statements were false. *Tiffany Indus., Inc.*, 536 F.Supp. at 434. Tiffany settled the claim it asserted against Harbor in this action, and Harbor's claim against Enger was dismissed without prejudice.

In October 1982, Harbor filed an independent action against Grant that was consolidated with other pending Tiffany cases in the Eastern District of Missouri. Harbor named nine current or former partners of Grant's St. Louis office as representatives of the partnership as a whole. The complaint alleged negligent and fraudulent misrepresentation, and sought actual and punitive damages. The Grant partners filed a motion to dismiss, arguing that as a matter of law, they could not be held liable to Harbor because they did not have specific knowledge of Harbor's use of the finan-

cial statements, and because Harbor was not within the limited class of persons that might be expected to rely on the statements. The district court denied the motion, stating that in a tort action, the essential question is whether the defendant knew or should have known of the alleged injury. The court found that because Harbor alleged that the partners " 'knew or should have known' that the financial statements they prepared, 'would be distributed to and/or be available to plaintiff as an entity commercially dealing and contracting with Tiffany Industries,' " the complaint sufficiently stated a claim that Harbor was among those who might have foreseeably relied on Grant's audits.

In April 1986, however, Harbor and the Grant partners agreed to dismiss the action without prejudice. The stipulation to dismiss contained a provision that the court's decision with respect to the Grant partners' earlier motion to dismiss would "have the same effect in any subsequently filed action as it had in the Harbor Insurance action." It is evident from the stipulation that by the "Harbor Insurance action" the parties were referring to the action being voluntarily dismissed. The parties further agreed that with respect to the refiling of any claims raised by Harbor in this action, Grant would not raise a statute of limitations defense unless the defense would have been available in the "Harbor Insurance action" at the time it was commenced.[2] There were two conditions to this provision: (1) that it applied to claims actually made by Harbor in the "Harbor Insurance action," and (2) that it applied only to the extent that Harbor commenced a new lawsuit within 60 days after the final

---

**2.** Paragraph 2 of the Stipulation to Dismiss reads as follows:

    2. In defense of any action hereafter commenced by Harbor, with respect to any claim made by Harbor that was made against the Grant Partners in the Harbor Insurance action, the Grant Partners agree that they, or any of them, will not raise as a defense that the claim is barred by any applicable statute of limitations unless that defense would have been available in the Harbor Insurance action at the time it was originally commenced. This Agreement extends only to claims actual-

ly made in the Harbor Insurance action by Harbor. It is the intent of the parties by this Agreement that the statute of limitations shall be tolled until 60 days after final resolution of all claims which Tiffany ... may have against Harbor.... The Grant Partners agree that in the event Harbor refiles the claims actually made in the Harbor Insurance action within the time restraints provided above, they will not raise a statute of limitations defense to such filing except as set forth above.

(App. A–92).

resolution of Tiffany's claims against Harbor under the D & O policy.

In September 1987, Tiffany filed a second lawsuit against Harbor on the theory that Harbor had acted unreasonably in failing to resolve the question of Tiffany's D & O insurance coverage. This case was settled in January 1988 for $2,000,000 and the lawsuit was dismissed.

The instant action against the Grant partners was then filed on April 7, 1988, less than sixty days after Tiffany's final claim against Harbor was resolved, with Count I alleging negligent and intentional misrepresentation and Count II alleging conspiracy. The Grant partners moved to dismiss and a hearing was held by the district court. The Grant partners argued once more that under Missouri law a claim against an accountant for misrepresentation requires an allegation that the plaintiff was a member of a limited group of persons for whose benefit and guidance the accountant intended to supply the information. By contrast, Harbor's complaint alleged that the financial statements prepared by Grant were "distributed to shareholders and supplied to creditors and others who had the right to rely upon them"; that "Grant held itself out to Harbor and others"; and that the financial statements were "distributed to shareholders, creditors or Harbor," the opposite of a limited group. The partners further argued that the complaint did not allege anything to show that they knew of Harbor's specific reliance on the financial statements. Referring to the district court's earlier refusal to dismiss in the "Harbor Insurance action," the partners argued that foreseeability of reliance is not enough to support liability.

The district court orally granted the motion to dismiss Count II (the conspiracy count) as time-barred, and took the motion to dismiss Count I under advisement. Har-

bor subsequently filed an amended complaint realleging Counts I and II of the original complaint, and adding Count III, a subrogation claim. Oral argument was again scheduled on a motion to dismiss. The court orally granted the motion to dismiss Count III as time-barred, and once more took under advisement the motion to dismiss Count I.

The court reaffirmed the dismissals of Counts II and III as time-barred, and granted the motion to dismiss Count I for failure to state a claim. Citing *Lindner Fund v. Abney*, 770 S.W.2d 437 (Mo.Ct. App.1989), the court held that even construing the complaint in the light most favorable to Harbor, Harbor failed to establish it was a member of a limited group of reliant parties. Harbor thereafter moved for leave to file a second amended complaint, which the district court denied. This appeal followed.

I.

We deal first with Harbor's arguments concerning dismissal of the conspiracy and subrogation claims. It is evident that these claims were not asserted in the "Harbor Insurance action." Thus, they are not saved by the stipulation for dismissal relied upon by Harbor. The stipulation specifically provided that it extended "only to claims actually made in the Harbor insurance action by Harbor." The conspiracy was alleged to have lasted from 1974 to May 1978. This action was not filed until April 1988. Missouri's five-year statute of limitations for fraud applies to the conspiracy claim. Mo.Rev.Stat. § 516.120(5) (1986). Accordingly, the district court did not err in dismissing this claim.[3]

Similarly, the subrogation claim is barred. Harbor stands in Tiffany's shoes and is bound by the same limitation that would have applied to Tiffany. *See Williams v. Globe Indem. Co.*, 507 F.2d

---

**3.** Harbor also argues that the claim is analogous to an amendment of the complaint filed in the Harbor Insurance action and therefore relates back to the filing of that action under Fed.R. Civ.P. 15(c). This argument is unavailing. The relation-back doctrine of Rule 15(c) is inapplicable to the filing of a new complaint after an earlier action has been voluntarily dismissed.

The voluntary dismissal of an action places the parties in a position as if the suit had never been filed. *Huelsman v. Civic Center Corp.*, 873 F.2d 1171, 1176 (8th Cir.1989); *Dade County v. Rohr Indus., Inc.*, 826 F.2d 983, 989 (11th Cir. 1987). Accordingly, there is no complaint to which this claim can relate back.

837, 839 (8th Cir.1974), *cert. denied,* 421 U.S. 948, 95 S.Ct. 1679, 44 L.Ed.2d 101 (1975). The limitation for negligence is five years, Mo.Rev.Stat. § 516.120(4) (1986), and the claim for breach of professional duties allegedly occurred eleven years before Harbor filed the action. The district court did not err in striking the subrogation count.

## II.

Harbor argues that the district court erred in dismissing Count I of its amended complaint for failure to state a claim under *Lindner.* Harbor relies upon the rulings made in the 1981 and 1982 actions in which the courts held that the allegations did state a claim under *Aluma Kraft,* and argues that *Lindner* simply reaffirmed *Aluma Kraft.*

■ We first observe that we give great weight to decisions of district judges on questions of state law. *International Art Galleries, Inc. v. Kinder–Harris, Inc.,* 907 F.2d 864, 866 (8th Cir.1990). The critical question is whether Harbor, as the insurer issuing the D & O policy has standing to assert a claim against the Grant partners, in view of the holding in *Lindner* that "[i]n order for an accountant to be held to a legal duty to a third party not in privity, the third party must be a known recipient or be within the limited class of persons the services were intended to benefit and guide." *Lindner,* 770 S.W.2d at 438 (citing *Aluma Kraft,* 493 S.W.2d at 383). We agree with Harbor that the foregoing holding is a restatement of the rule announced in *Aluma Kraft,* but nevertheless conclude that the district court correctly dismissed Count I for failure to state a claim. Harbor has never alleged that the financial statements were prepared for the specific purpose of enabling it to determine whether it should issue the D & O policy; nor has Harbor alleged that Grant had specific knowledge that Harbor would be a recipient of the statements. We see no difference between Harbor's assertion that Grant knew or should have known that Harbor would rely on the financial statements prepared by Grant for Tiffany, which were "filed with the ... SEC ... distributed to shareholders, and supplied to creditors and others who had a right to rely on [them] ... including Harbor," and the unsuccessful argument made by the investors in *Lindner* that accountants know or are deemed to know that the information they supply to their clients will be publicly disclosed and utilized by third parties. *Lindner,* 770 S.W.2d at 438. Like the appellants in *Lindner,* Harbor failed to allege facts showing it was within a *limited* foreseeable class of reliant parties.

■ Harbor argues the district court was precluded from dismissing Count I because Grant agreed that the court's denial of the motion to dismiss in the "Harbor Insurance action" would have the same effect in any subsequently filed action. Whether a complaint states a cause of action, however, is a question of law. *Westcott v. City of Omaha,* 901 F.2d 1486, 1488 (8th Cir.1990). Parties cannot bind the court on the applicable law by stipulation. Harbor's reliance upon the stipulation is therefore unavailing.

■ Harbor also argues that the district court's finding in the "Harbor Insurance action," that Harbor stated a claim under *Aluma Kraft,* foreclosed the court from dismissing the complaint in the instant action because that finding became the law of the case. Law of the case is a doctrine of discretion which "provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues *in subsequent stages in the same case.*'" *Little Earth of the United Tribes, Inc. v. United States Dep't. of Hous. & Urban Dev.,* 807 F.2d 1433, 1440–41 (8th Cir.1986) (quoting *Arizona v. California,* 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)) (emphasis added). Because the instant case is not the same case as the "Harbor Insurance action," the law of the case doctrine does not apply. Furthermore, even if the doctrine did apply, it would not foreclose the court from correcting its errors. *Liddell v. Missouri,* 731 F.2d 1294, 1304 (8th Cir.) (en banc), *cert. denied,* 469 U.S. 816, 105 S.Ct. 82, 83 L.Ed.2d 30 (1984). *Lindner* clarified the limited scope of liability to third parties set forth in *Aluma Kraft,* and made clear the insufficiency of Harbor's standing to maintain an action against the Grant partners.

■ Finally, Harbor asserts that the district court erred in denying Harbor's motion, filed two weeks after the amended complaint was dismissed, to file a second amended complaint. "The decision whether to allow amendment of a complaint is left to the sound discretion of the district court and will be reversed only if that discretion is abused." *Anderson v. Alpha Portland Indus., Inc.*, 836 F.2d 1512, 1521 (8th Cir.1988), *cert. denied*, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989). While a pretrial motion for leave to amend is to be liberally granted, different considerations apply to motions filed after dismissal. *Niagra of Wisconsin Paper Corp. v. Paper Indus. Union–Management Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986). The district court found that Harbor's proposed second amended complaint failed to correct the substantive deficiencies that caused the dismissal of the amended complaint. We have reviewed the proposed complaint and agree. Under these circumstances, the district court did not abuse its discretion in denying Harbor's request. *See id.* (leave to amend properly denied where filing of amended complaint would be futile).

The judgment of the district court is hereby affirmed.