

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| CHRISTOPHER A. JACKSON REVOCABLE INTER VIVOS TRUST OF 19 JULY 1995, CHRISTOPHER A. JACKSON TRUSTEE and PORTLAND 41, LIMITED PARTNERSHIP F/K/A OVIS SALES, LIMITED PARTNERSHIP, | ) ) ) ) ) ) | No. ED108172 |
| Plaintiff/Appellant, | ) ) | Appeal from the Circuit Court of St. Louis County |
| vs. | ) ) | |
| ABELES & HOFFMAN, P.C., | ) ) | Honorable David L. Vincent III |
| Defendant/Respondent. | ) | Filed: February 18, 2020 |

### Introduction

Christopher A. Jackson Revocable Inter Vivos Trust of 19 July 1995, Christopher A. Jackson Trustee and Portland 41, Limited Partnership f/k/a Ovis Sales, Limited Partnership (Appellants) appeal from the trial court's judgment granting the motion for summary judgment filed by Abeles & Hoffman, P.C. (Respondent). Appellants claim the trial court erred because there were insufficient uncontroverted material facts to establish summary judgment pursuant to Missouri case law related to professional negligence claims against an accounting firm by a non-client.

### Factual and Procedural Background

Appellants filed a petition in St. Louis County Circuit Court alleging one count of professional negligence against Respondent. Appellants, a trust and a limited partnership, owned

shares of interest in AMS Investment Group, LP and AMS Automotive, LLC (collectively AMS), and were wholly controlled by Christopher A. Jackson (Jackson). Respondent is an accounting firm.

In their petition, Appellants claimed AMS hired Respondent to serve as its accountant. Appellants alleged that while engaged as AMS's accountant, Respondent was negligent in the performance of its professional accounting duties by improperly preparing a review of AMS's financial statements. Specifically, Appellants alleged Respondent knew AMS was conducting the review to determine Appellants' ownership interest valuation in AMS and therefore owed a duty to Appellants to properly determine such ownership interest valuation.

Respondent filed its answer and affirmative defenses to Appellants' petition. Following discovery, Respondent filed its motion for summary judgment along with a statement of uncontroverted facts. Respondent's motion for summary judgment claimed it was entitled to judgment as a matter of law because Appellants did not rely on the report generated by Respondent and therefore would be unable to establish the duty or causation elements of their negligence claim.

Appellants responded to Respondent's motion and statement of material facts, admitting 47 of Respondent's 48 uncontroverted facts.[1] Appellants admitted the following facts: Pursuant to an engagement letter between Respondent and AMS, Respondent was hired to perform Agreed-Upon Procedures in order to calculate the purchase price of a withdrawn partner per the provisions in the AMS Amended and Restated Agreement of Limited Partnership. On approximately November 11, 2013, Respondent produced its report and delivered it to AMS.

---

[1] Appellants denied Paragraph 1, which characterized the action as an "accounting malpractice case," whereas Appellants asserted their petition brought a claim for negligence. This distinction is not relevant to any of the issues on appeal.

Based on the report, AMS offered Appellants via Jackson approximately $1.3 million for Appellants' ownership interests in AMS. Jackson refuted the numbers in the report, rejected AMS's offer, and instead entered into negotiations with AMS for the sale of his ownership interests through one of the remaining AMS partners. After entering into negotiations, AMS offered almost double their original $1.3 million offer; however, rather than accept the offer, Jackson negotiated with the remaining partner for approximately two to three weeks, asking for $3 million to $3.5 million. Respondent stopped acting as AMS's accountants before the end of 2013. In January 2014, Appellants and AMS began litigation regarding Appellants' ownership interests. Appellants and AMS ultimately settled for a confidential amount in January 2017.

Appellants filed an opposition memorandum in which they argued they would be able to establish a duty; however, they did not address the issue of causation. Appellants also submitted a statement of six additional uncontroverted facts, to which Respondent admitted.

Following argument, the trial court granted Respondent's motion for summary judgment. Appellants then filed a motion for reconsideration and vacation of the judgment, which the trial court denied. This appeal follows. Additional relevant facts will be adduced in the discussion section.

## Point Relied On

Appellants claim the trial court erred in granting summary judgment because there were insufficient uncontroverted material facts to establish summary judgment pursuant to Missouri case law related to professional negligence claims against an accounting firm by a non-client.

## Standard of Review

Appellate review of the grant of summary judgment is *de novo*. ITT Comm. Fin. Corp. v. Mid-Am. Marine Supply Corp., 854 S.W.2d 371, 376 (Mo. banc 1993). "Whether to grant

summary judgment is purely an issue of law." Ashford Condo., Inc. v. Horner & Shifrin, Inc., 328 S.W.3d 714, 717 (Mo. App. E.D. 2010). We will uphold summary judgment on appeal only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c)[2]; ITT Comm. Fin. Corp., 854 S.W.2d at 376. The record is viewed "in the light most favorable to the party against whom judgment was entered." Id. We will affirm the trial court's judgment if it is sustainable on any theory. Citibrook II, L.L.C. v. Morgan's Foods of Mo., Inc., 239 S.W.3d 631, 634 (Mo. App. E.D. 2007).

Discussion

When reviewing a trial court's decision whether to grant summary judgment, the classification of whether the movant is a "claimant" or a "defending party" is important, as a movant's right to summary judgment as a matter of law differs depending upon that classification. ITT Comm. Fin. Corp., 854 S.W.2d at 380–81. Because a defending party does not bear the burden of persuasion at trial, "that party need not controvert *each* element of the non-movant's claim in order to establish a right to summary judgment." Id. at 381. (emphasis in original). Rather, the defending party may establish a right to summary judgment by showing facts that negate *any one* of the claimant's elements facts. Id. Once the defending party movant makes such a showing, the non-movant must demonstrate that one or more of the material facts asserted by the movant as not in dispute is, in fact, genuinely disputed. Crow v. Crawford & Co., 259 S.W.3d 104, 113 (Mo. App. E.D. 2008). The non-movant "may not rest upon the mere allegations or denials of his pleading, but his *response*, by affidavits or as otherwise provided in this Rule 74.04, *shall set forth specific facts* showing that there is a genuine issue for trial." ITT Comm. Fin. Corp., 854 S.W.2d at 381, quoting Rule 74.04(e) (emphasis in original). "A

---

[2] All rule references are to Mo. R. Civ. P. (2019).

'genuine issue' is a dispute that is real, not merely argumentative, imaginary or frivolous." Id. at 382.

Here, Respondent was the defending party and did not bear the burden of persuasion at trial. As the defending party, Respondent could establish its right to summary judgment by showing facts negating any one of the elements in Appellants' claim of alleged negligence.

Appellants' sole claim against Respondent pursuant to their petition is for professional negligence. "In any action for negligence, the plaintiff must establish that (1) the defendant had a duty to the plaintiff; (2) the defendant failed to perform that duty; and (3) the defendant's breach was the proximate cause of the plaintiff's injury." Peters v. Wady Indus., Inc., 489 S.W.3d 784, 793 (Mo. banc 2016), quoting Martin v. City of Washington, 848 S.W.2d 487, 493 (Mo. banc 1993).

"A legal duty owed by one to another may arise from at least three sources: (1) it may be prescribed by the legislative branch; (2) it may arise because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury; or (3) it may arise because a party has assumed a duty by contract or agreement whether written or oral." Hackmann v. Mo. Am. Water Co., 308 S.W.3d 237, 239 (Mo. App. E.D. 2009), citing Cupp v. National R.R. Passenger Corp., 138 S.W.3d 766, 771 (Mo. App. E.D. 2004).

Here, there was no duty prescribed by the legislative branch. Additionally, the uncontroverted material facts show there was not a contract between Appellants and Respondent. Therefore, if a legal duty exists, it must arise "because the law imposes a duty based on the relationship between the parties or because under a particular set of circumstances an actor must exercise due care to avoid foreseeable injury." Id.

A negligence action involving economic loss from professional malpractice is premised on the professional duty created by the accountant-client relationship. See Children's Wish Found. Int'l, Inc. v. Mayer Hoffman McCann, P.C., 331 S.W.3d 648, 653 (Mo. banc 2011), citing Business Men's Assurance Co. of America v. Graham, 891 S.W.2d 438, 453 (Mo. App. W.D. 1994). "In certain cases, we have held that that a third party, although not in privity, has a claim for the alleged negligence of a professional who renders an opinion upon which the third person relies to its detriment." Miller v. Big River Concrete, LLC, 14 S.W.3d 129, 134 (Mo. App. E.D. 2000), citing Westerhold v. Carroll, 419 S.W.2d 73, 81 (Mo. 1967). "The Missouri Supreme Court has cautioned that the extension of liability in this regard should be done carefully, evaluating the particular circumstances of each case individually." Blevins v. American Family Mut. Ins. Co., 423 S.W.3d 837, 841 (Mo. App. E.D. 2014).

In the instant case, Appellants admitted the following material facts in their response to Respondent's motion for summary judgment:

> The client of Respondent pursuant to the October 23, 2012 engagement letter was AMS.

> The October 23, 2012 and September 20, 2013 engagement letters were executed between Respondent and AMS, not between Respondent and Appellant.

> Appellants never hired Respondent to do any type of work for them.

These facts confirmed the accountant-client relationship was between the accountant, Respondent, and the client, AMS.

Because Appellants do not have an accountant-client relationship with Respondent, but rather are third parties to the contract, whether Respondent was liable to Appellants is controlled by the decision in Aluma Kraft Mfg. Co. v. Elmer Fox & Co., 493 S.W.2d 378 (Mo. App. St.L.1973). There, the precise issue determined was "whether an accounting firm may be liable

6

to a third party not in privity when it is alleged that the public accountant knows the audit would be utilized and relied upon by the plaintiff, and knows the audit was performed for the purpose of determining the price the plaintiff would pay for the shares of stock." Id. at 381. The Court stated:

> [W]e reject the privity requirement when, as alleged in the petition, the accountant knows the audit is to be used by the plaintiff for its benefit and guidance, or knows the recipient intends to supply the information to prospective users, such as plaintiff here. Therefore, we hold that a third party in such situations, although not in privity, has a claim for the alleged negligence of an accountant who renders an unqualified opinion upon which the third person relies to its detriment.

Id. at 383. Aluma Kraft's holding requires both (1) knowledge of the accountant that an audit is to be used by a third party, and (2) the third party's reliance on the accountant's opinion.

Respondent argues the uncontroverted material facts demonstrate Appellants did not rely on Respondent's representations, and as a result Respondent is not liable to Appellants under Aluma Kraft. Here, Appellants admitted to the following material facts claimed by Respondent:

> AMS offered to buy Appellants' membership interests at the valuation calculated by Respondent, but Appellants' refuted the numbers that were in the Agreed-Upon Procedures report and rejected AMS's offer.

> Appellants were asking for "3 or 3.5 million or around there."

> After Appellants rejected AMS's offer, they entered into negotiations with AMS and were ultimately offered close to $3 million.

> Appellants did not sell for the nearly $3 million offer, but rather entered into litigation with AMS which was ultimately settled for a confidential amount.

These facts show that Appellants did not rely on the purchase price as calculated by Respondent. The uncontroverted material facts established that Appellants and Respondent were not in privity and that Appellants did not rely on the report generated by Respondent to their detriment; in fact, they did the opposite of rely on it – they rejected it. Because Appellants

7

cannot show Respondent caused them injury, Respondent successfully negated one of the elements of Appellants' claim.

<u>Conclusion</u>

The trial court did not err in granting summary judgment in favor of Respondent because the uncontroverted material facts established Appellant would be unable to succeed on its claim of professional negligence.  The judgment of the trial court is affirmed.


_____
SHERRI B. SULLIVAN, J.


Mary K. Hoff, P.J., and
Angela T. Quigless, J., concur.